No. 2--06--0839          Filed: 12-19-07

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 06--CM--871 |
| JENNA M. CHRISTOPHERSON, | ) ) ) | Honorable Charles P. Weech, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE ZENOFF delivered the opinion of the court:

The State seeks review of the trial court's dismissal of the information charging defendant with the offense of unlawful delivery of alcoholic liquor to a person under the age of 21 (a minor) in violation of section 6--16(a)(iii) of the Liquor Control Act of 1934 (Act) (235 ILCS 5/6--16(a)(iii) (West 2004)). The trial court found that the statute was not intended to apply to minors who sell, give, or deliver alcohol to other minors. We find that the language of the statute prohibits the sale, gift, or delivery of alcohol to a minor by a person of any age; thus, we reverse and remand for further proceedings.

BACKGROUND

On or about March 17, 2005, defendant, who was 17 at the time, obtained a 30-pack of Lighthouse beer and 2 cases of Bud Light beer. Defendant gave some of this beer to Jamie L. Smith, a minor, who consumed it. After drinking the beer, Smith died in a one-car accident while driving.

On April 4, 2006, the State charged defendant with the unlawful delivery of alcoholic liquor to a minor. In response, defendant filed a motion to dismiss the charge. In her motion to dismiss, defendant alleged that the statute under which she was charged did not apply to her, because she was a minor at the time of the incident. Defendant argued that the statute was intended to prevent only persons over the age of 21 from providing alcoholic liquors to minors. Defendant also alleged that the statute was unconstitutionally vague.

After arguments on July 13, 2006, the trial court took the matter under advisement. On August 3, 2006, the trial court granted defendant's motion to dismiss. Finding the language of the statute to be ambiguous, the trial court held that the legislative history demonstrated that the statute was intended to regulate the delivery of alcohol to minors only by persons over the age of 21. This timely appeal followed.

## ANALYSIS

The State argues on appeal that the trial court erred in dismissing the charge against defendant, because the statute at issue does prohibit minors from distributing alcohol to other minors. When called upon to review a trial court's construction of a statute, our review is de novo. People v. Robinson, 172 Ill. 2d 452, 457 (1996).

The primary goal in statutory construction is to ascertain and give effect to the intent of the legislature. People v. Pullen, 192 Ill. 2d 36, 42 (2000). In doing so, "we must assume that the legislature did not intend an absurd or unjust result." Pullen, 192 Ill. 2d at 42. The first step is to examine the language of the statute--"the surest and most reliable indicator of legislative intent." Pullen, 192 Ill. 2d at 42. If the statute does not provide a definition indicating a contrary legislative intent, words in a statute are given their ordinary and commonly understood meanings. People v.

Liberman, 228 Ill. App. 3d 639, 648 (1992). Where the language is clear, the statute may not be revised to include exceptions, limitations, or conditions that the legislature did not express. People v. Goins, 119 Ill. 2d 259, 265 (1988). However, when two conflicting and reasonable interpretations exist, the statute is considered ambiguous, and a court may consider the legislative history of the statute as a construction aid. People v. Davis, 296 Ill. App. 3d 923, 927 (1998).

The relevant portion of the statute at issue in this case reads as follows: "No person, after purchasing or otherwise obtaining alcoholic liquor, shall sell, give, or deliver such alcoholic liquor to another person under the age of 21 years, except in the performance of a religious ceremony or service." 235 ILCS 5/6--16(a)(iii) (West 2004). The question presented is whether the word "person" in the phrase "no person" includes a person under the age of 21. The State argues that it does. We agree.

"Person" ordinarily refers to "an individual human being." Webster's Third New International Dictionary 1686 (1993); Black's Law Dictionary 1178 (8th ed. 2004). The term does not ordinarily refer only to people over the age of 21, or even to people of any specific age. In the initial sections of the Act, the legislature included definitions of 37 separate terms used throughout the Act. 235 ILCS 5/1--3.01 through 1--3.37 (West 2004). The term "person" is not included. We find that the legislature intended the common meaning of the term "person" because it did not include in the statute a contrary definition or age classification. Liberman, 228 Ill. App. 3d at 648.

That the legislature intended to use the ordinary meaning of "person" becomes especially evident when we examine the rest of the language in the statute. See People v. Acevedo, 275 Ill. App. 3d 420, 425 (1995) ("The language of a statute must be viewed as a whole, such that each section of the statute is examined in relation to every other section"). Within the same sentence as

the term "person," the legislature referred to a "person under the age of 21 years." 235 ILCS 5/6--16(a)(iii) (West 2004). Subsection (a)(ii) prohibits delivery companies from delivering to "any person *** under the age of 21" a package labeled as containing alcoholic liquor and requires the signature of "an adult of at least 21 years." 235 ILCS 5/6--16(a)(ii) (West 2004). "Any person at least 21 years of age" who pays for a hotel room knowing that it will be used by "any person under 21 years of age" to consume alcohol will be liable to anyone who is injured by the intoxicated minor. 235 ILCS 5/6--21(a) (West 2004).

These references to people within certain age ranges demonstrate that the legislature, if it intended to do so, clearly had the ability and knowledge to limit the term "person" to those over the age of 21. See In re Michael M., 364 Ill. App. 3d 598, 607-08 (2006).

In Michael M., the trial court determined the respondent to be unfit and terminated her parental rights, finding that she had a mental illness and was mentally impaired. She appealed, arguing that the State failed to prove she was unfit by producing clear and convincing evidence that she had a mental impairment, mental illness, mental retardation, or developmental disability. Michael M., 364 Ill. App. 3d at 605. At issue were the definitions of the terms "mental illness" and "mental impairment." Under the relevant statutes, the terms "mental retardation" and "developmental disability" were defined as conditions that "originate prior to the age of 18." Michael M., 364 Ill. App. 3d at 607.

The terms "mental illness" and "mental impairment," however, were not explicitly defined in the Adoption Act (750 ILCS 50/1 et seq. (West 2004)), nor did the legislature refer to any specific definition in any other statute. The respondent argued that the State was required to prove that these conditions also originated prior to the age of 18. Michael M., 364 Ill. App. 3d at 607. In interpreting

these terms, this court looked to both the Mental Health and Developmental Disabilities Code (405 ILCS 5/1--100 et seq. (West 2004)), which provided the definitions of "mental retardation" and "developmental disability," and the dictionary definitions of the terms at issue. Neither included or implied an age requirement. Michael M., 364 Ill. App. 3d at 607-08. Finding that the legislature did not intend to include an age requirement in the terms "mental illness" and "mental impairment," we stated:

"Nowhere in the plain language of this provision is there a requirement that the condition originate before the age of 18. Had the legislature intended to include the age requirement in this definition, it could have easily done so as it did with the terms 'mental retardation' and 'developmental disability.' The legislature's express failure to include such language leads us to conclude that an age requirement was never intended.

*** [W]e refuse to engraft one onto the statute where the legislature could have easily done so had it so intended." Michael M., 364 Ill. App. 3d at 607-08.

Just as the legislature in Michael M. could have included an age limitation for the terms "mental illness" and "mental impairment," so could it have done so for the term "person" in the present case. Both in Michael M. and in the present case, the legislature demonstrated that it had the knowledge and ability to limit terms to specific age ranges. It would not be appropriate for us to read into the statute age limitations the legislature did not express. Goins, 119 Ill. 2d at 265.

We note that defendant does not argue that the language of the statute is ambiguous. Instead, defendant makes several arguments for why we should disregard the plain language of the statute and exclude persons under 21 from prosecution under the statute. We take each of these arguments in turn.

First, defendant argues that situations may exist when it is necessary to apply an interpretation other than the one dictated by the statute's plain language. Relying on Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 73 L. Ed. 2d 973, 102 S. Ct. 3245 (1982), and Church of the Holy Trinity v. United States, 143 U.S. 457, 36 L. Ed. 226, 12 S. Ct. 511 (1892), defendant claims that this is such a case. We disagree.

In Griffin, the Supreme Court was called upon to interpret a federal statute that allowed seamen to recover two days' wages for each day their employers withheld wages. Griffin, 458 U.S. at 570, 73 L. Ed. 2d at 980, 102 S. Ct. at 3249. At issue was whether district courts had the discretion to limit the time period for which the extra wages were assessed. The Court found that the literal language of the statute did not give courts such discretion. Griffin, 458 U.S. at 571, 73 L. Ed. 2d at 980, 102 S. Ct. at 3250. The Court stated, however, that when the literal application of a statute is "demonstrably at odds with" or would " ' "thwart the obvious purpose of the statute," ' [citations]" it should be given a restricted interpretation. Griffin, 458 U.S. at 571, 73 L. Ed. 2d at 981, 102 S. Ct. at 3250. The literal application of the statute in Griffin would have resulted in an award of over $300,000 to the plaintiff for withheld wages of $412.50. Still, the Court held that such an application was not absurd given the purpose of the statute, which was not only to compensate unpaid seamen, but also to deter employers from withholding wages without sufficient cause. Griffin, 458 U.S. at 575-76, 73 L. Ed. 2d at 983, 102 S. Ct. at 3252.

Similarly, the Supreme Court in Holy Trinity stated that the literal language of a statute should not be applied when it produces "absurd results which *** make[] it unreasonable to believe that the legislator intended to include the particular act." Holy Trinity, 143 U.S. at 459, 36 L. Ed. at 228, 12 S. Ct. at 512. There, a church signed an employment contract with a pastor from England. Under

the contract, the pastor was to move from England to the United States to serve at the church. The United States brought suit, alleging that the contract violated a federal statute that prohibited a corporation from encouraging or assisting the importation of an alien under an employment contract made prior to the alien's migration. Holy Trinity, 143 U.S. at 457-58, 36 L. Ed. at 227, 12 S. Ct. at 511. The Court found that, despite the plain language of the statute, the legislature could not have intended to prohibit contracts such as the one made by the church. Holy Trinity, 143 U.S. at 458-59, 36 L. Ed. at 227-28, 12 S. Ct. at 511-12. Such a prohibition, the Court reasoned, would be absurd in light of the fact that the United States is a nation composed of "a religious people." Holy Trinity, 143 U.S. at 465, 36 L. Ed. at 230, 12 S. Ct. at 514.

Our interpretation is not at odds with and does not defeat the purpose of the statute, nor is it inconsistent with the public policy of this state. The purposes of the Act are explicitly stated: to protect the health, safety, and welfare of the public, and to promote temperance in the consumption of alcohol. 235 ILCS 5/1--2 (West 2004); Stevens v. Lou's Lemon Tree, Ltd., 187 Ill. App. 3d 458, 467 (1989). Promotion of these purposes is to be accomplished through the liberal construction of the Act. 235 ILCS 5/1--2 (West 2004); Kenessey Enterprises, Inc. v. Illinois Liquor Control Comm'n, 63 Ill. App. 3d 975, 978 (1978). Including minors within the phrase "no person" furthers, rather than undermines, this purpose. Our interpretation is also consistent with the Illinois public policy of preventing alcohol consumption by minors and its attendant dangers (Wilk v. 1951 W. Dickens, Ltd., 297 Ill. App. 3d 258, 263 (1998)), because friends and relatives under the age of 21 may be a source of alcohol for other minors.

We also do not find the plain language of the statute to produce absurd results. Given the purposes of the statute, there is nothing absurd about preventing distribution of alcohol to a minor

regardless of whether the distribution is made by another minor or a person over 21. Minors who consume alcohol provided to them by other minors are in no less danger than those who consume alcohol provided to them by persons over 21.

Rather, the interpretation for which defendant argues is more likely to produce absurd results. In Illinois, persons over 17 may be prosecuted as adults. 705 ILCS 405/5--120 (West 2004). Persons under 17 are subject to the provisions of the Juvenile Court Act of 1987 (705 ILCS 405/5--101 et seq. (West 2004)). Although provided a separate adjudication system, persons under the age of 17 are subject to prosecution for violations of the same criminal statutes as persons over the age of 17. 705 ILCS 405/5--120 (West 2004) ("Proceedings may be instituted under the provisions of this Article concerning any minor who prior to the minor's 17th birthday has violated or attempted to violate *** any federal or State law or municipal or county ordinance"). According to defendant's interpretation of the term "person," people under the age of 21 would be completely exempt from prosecution for delivering alcohol to a minor, while still being subject to every other statute in force. We cannot agree that the legislature intended such a result absent a clear indication.

Defendant next argues that the legislative history of the statute demonstrates that the legislature did not intend to make the statute applicable to minors. In support of this argument, defendant quotes comments made by two representatives during a discussion on an amendment to the statute. In these comments, both representatives use illustrations involving the delivery of alcohol to a minor by a person over the age of 21. We need not, and in fact cannot, consider the legislative history of the statute, because we have already determined that the language of the statute plainly states the legislature's intent. People v. Davis, 296 Ill. App. 3d 923, 926 (1998).

Although we are not permitted to review the legislative history of the statute, were we to analyze the legislative history, we would not find it persuasive enough to overcome the clear language of the statute. Defendant relies on comments made by Representatives Hannig and Black during discussions of an amendment to the statute. The amendment increased the penalties for violating section 6--16(a)(iii) of the Act, including making a violation a Class 4 felony if a death results from the violation. 235 ILCS 5/6--16(a)(iii) (West 2004). During the third reading of the bill, Representative Hannig, the sponsor of the bill in the House of Representatives, stated:

"This Bill deals with the tragedy that occurred in my district in Macoupin County, in the county that I grew up. In the case of a young man who was . . . who attended what we would call in the rural area, a keg party, where an individual who was of age provided, that for a fee, individuals of any age, for any reason could come to this place in a farmer's field and drink to their heart's delight. *** [W]e had an underage young man who participated in that party and drank beyond his capacity and was ultimately killed in an automobile accident on his way home. *** So, we're trying to send a strong message to adults that we have a responsibility to insure that when there's alcoholic beverages in our home or under our control, that we not provide these beverages to underage people ***." 92d Ill. Gen. Assem., House Proceedings, April 23, 2002, at 20 (statements of Representative Hannig).

Defendant also relies on statements of Representative Black. Representative Black expressed concerns about parents being prosecuted for allowing minors to consume alcohol while participating in private celebrations such as family weddings.

These statements are unpersuasive for several reasons. First and foremost, the statements were made in the context of an amendment to the statute. They do not relate to the substantive

provision of section 6--16(a)(iii), the current version of which was enacted in 1963. 1963 Ill. Laws 2520. Whatever the intent of these legislators in 2002, their comments do not necessarily reflect the intent of the legislators in 1963 who chose to use the phrase "no person." Indeed, transcripts of floor debates in the Illinois legislature do not exist for dates prior to October 1971. Without a contrary indication, we cannot assume that the 1963 legislature intended anything other than the statute's plain meaning.

Next, we do not believe that the brief statements of two legislators regarding an amendment to the provision are dispositive of the intent of the entire legislature. The fact that Representative Hanning was the sponsor in the House of Representatives of the amendment increasing the penalties does not change our view. A bill sponsor's statements, while given consideration, are not controlling. Kunkel v. Walton, 179 Ill. 2d 519, 536 (1997), citing People v. Hickman, 163 Ill. 2d 250, 262 (1994).

Finally, even if the statements of Representatives Hannig and Black were representative of the intent of the legislature, we do not believe they necessarily exclude the prosecution of minors under section 6--16(a)(iii). Representative Hannig's statement about an adult (i.e., a person over 21) providing alcohol to a minor at a keg party is only a statement about Representative Hannig's motivations for supporting the amendment. The statement no more limits the application of the statute to adults who give alcohol to minors than it limits the application of the statute to alcohol distributed at keg parties. Likewise, Representative Black spoke only of a parent giving a sip of champagne to a minor at a family wedding. We do not read that example as an expression of his intent to limit the application of the statute to adults who distribute alcohol to minors any more than we do as an expression of intent to limit application to the distribution of alcohol at family weddings.

The statements of the representatives are examples; they are not an exhaustive list of the situations to which section 6--16(a)(iii) applies.

Defendant next argues that an interpretation that excludes minors is supported by the fact that minors are treated differently than adults in a number of contexts. Defendant points to the different treatment of adults and minors under the laws of this state in the contexts of sexual intercourse, contraceptives, marriage, driving, voting, and purchasing or possessing tobacco. We do not disagree that minors are often treated differently than adults under the law. However, we would point out that when the legislature has chosen to single out minors, or anyone of a certain age, for special treatment, it has done so explicitly. For example, a person unlawfully possesses a firearm if he or she is "under 18 years of age." 720 ILCS 5/24--3.1(a)(1) (West 2004). A minor may obtain an instruction permit to operate a motorcycle, but only if he or she is "16 or 17 years of age." 625 ILCS 5/6--107.1(a)(2) (West 2004). Similarly, people who are "81 years of age through age 86" must renew their driver's licenses every two years, while someone "87 years of age or older" must renew it once per year. 625 ILCS 5/6--115(g) (West 2004). In this case, the legislature chose not to limit the age of persons whose conduct is regulated under the statute.

Finally, in response to the State's discussion of the California case of King v. Ladyman, 81 Cal. App. 3d 837, 146 Cal. Rptr. 782 (1978), defendant argues that because Illinois does not extend tort liability to adults who act as social hosts and furnish alcohol to minors (Charles v. Seigfried, 165 Ill. 2d 482, 504 (1995)), logic dictates that liability should not be extended to minors who distribute alcohol to other minors. In support of this argument, defendant cites Kapres v. Heller, 536 Pa. 551, 640 A.2d 888 (1994), a Pennsylvania case holding that social host liability does not exist for minors who provide alcohol to other minors. Kapres, 536 Pa. at 557, 640 A.2d at 891.

We fail to see the relevance of social host tort liability to the present case. Whether a person may be liable in tort for serving alcohol to a minor bears no relation to the interpretation of section 6--16(a)(iii). This point is well illustrated by the Pennsylvania Supreme Court. As defendant points out, in Pennsylvania, minors may not be held liable in tort for providing alcohol to other minors. Kapres, 536 Pa. at 557, 640 A.2d at 891. They may, however, be held criminally liable for distributing alcohol to other minors. Commonwealth v. Lawson, 2000 Pa. Super. 242, ¶13 (2000).

In Lawson, the defendant, a minor, was convicted of furnishing alcohol to a minor. The statute at issue read, " 'a person commits a misdemeanor *** if he intentionally and knowingly sells or intentionally and knowingly furnishes *** any liquor or malt or brewed beverages to a person who is less than 21 years of age.' " Lawson, 2000 Pa. Super. 242, ¶14, quoting 18 Pa. Cons. Stat. §6310.1 (____). As in the present case, the defendant in Lawson argued that the term "person" was limited to a person over the age of 21. Lawson, 2000 Pa. Super. 242, ¶9. After finding that the ordinary meaning of the term "person" does not distinguish between a minor and an adult, the Pennsylvania court found the language of the statute to be plain in prohibiting the distribution of alcohol to a minor by a person of any age. Lawson, 2000 Pa. Super. 242, ¶13.

The language of section 6--16(a)(iii) of the Liquor Control Act of 1934 is clear in prohibiting the distribution of alcohol to a minor by a person of any age. Therefore, we hold that the trial court erred in dismissing the information.

CONCLUSION

For the foregoing reasons, we reverse the judgment of the McHenry County circuit court and remand for further proceedings.

Reversed and remanded.

BYRNE and GILLERAN JOHNSON, JJ., concur.