Docket No. 109495.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. DANNY COMAGE, Appellant.

*Opinion filed February 25, 2011.*

JUSTICE BURKE delivered the judgment of the court, with opinion.

Chief Justice Kilbride and Justice Theis concurred in the judgment and opinion.

Justice Freeman specially concurred, with opinion.

Justice Thomas dissented, with opinion, joined by Justices Garman and Karmeier.

## OPINION

In this case, we must determine whether certain physical evidence was "concealed" within the meaning of Illinois' obstructing justice statute when police officers knew where the evidence was and had no difficulty recovering it, but the evidence was out of the officers' sight for approximately 20 seconds. The appellate court concluded that the evidence was concealed and, on that basis, affirmed the defendant's conviction for obstructing justice. 395 Ill. App. 3d 560. For the reasons that follow, we reverse the judgment of the appellate court.

Background

In March 2007, the State charged the defendant, Danny Comage, with obstructing justice (720 ILCS 5/31–4(a) (West 2006)), alleging that defendant, "with the intent to obstruct the prosecution of himself for possessing drug paraphernalia, knowingly concealed physical evidence, in that he threw a metal pipe and push-rod[1] over a wooden privacy fence and out of view while being pursued by police." The State also charged defendant with unlawful possession of drug paraphernalia (720 ILCS 600/3.5 (West 2006)) and resisting a peace officer (720 ILCS 5/31–1 (West 2006)).

In July 2007, a jury in the circuit court of Macon County convicted defendant of obstructing justice and resisting a peace officer but found him not guilty of possession of drug paraphernalia. Defendant subsequently filed a motion for judgment notwithstanding the verdict or, alternatively, for a new trial. Defendant contended, *inter alia*, that one of the State's witnesses made reference to defendant having invoked his right to remain silent during police questioning in violation of *Doyle v. Ohio*, 426 U.S. 610 (1976). The trial court granted defendant's motion for a new trial. Thereafter, the trial court dismissed the unlawful possession count on double jeopardy grounds and the State then voluntarily dismissed the charge for resisting arrest.

A second jury trial commenced in February 2008 on the remaining charge of obstructing justice. Officers Chad Larner and Kathleen Romer, both of the Decatur police department, testified on behalf of the State. On the night of March 19, 2007, shortly before 10:50 p.m., Larner was investigating a theft at a gas station in the 900 block of West Eldorado Street in Decatur. Larner began looking for the suspect, who had been described as a clean-shaven, thinly built, black man who was wearing "nice casual clothes." While patrolling the area, Larner observed a man who matched the suspect's description in the parking lot of a McDonald's restaurant. The man ran south from the parking lot, across Eldorado Street, and into the parking lot of a Pizza Hut restaurant. Larner stopped the man, advised him of the purpose for the stop, and asked for identification. The man

---

[1]A "push-rod" is a tool used to clean and pack drugs into crack pipes.

identified himself as defendant.

As Larner was conducting a warrant check on defendant, Officer Kathleen Romer arrived. While the officers were talking to defendant, Romer noticed that defendant began to act strangely: jumping around, fidgeting, and at one point, threatening to urinate on the squad car. As the dispatcher radioed back information about defendant to the officers, defendant took off running through the parking lot. The two officers chased defendant for 20 to 30 yards before he finally stopped.

During the chase, both officers saw defendant reach into his pocket, pull out two rod-like objects that were five to six inches in length, and throw them over a six-foot-tall, wooden privacy fence that abutted the Pizza Hut parking lot. The officers were a short distance behind defendant when he threw the objects. Larner stated that the area was "well-lit with artificial lighting" and that he had a "clear observation" of defendant as they were running. Defendant stopped 10 to 15 feet after throwing the objects when Romer threatened to use her Taser.

After securing defendant, Larner walked around to the other side of the fence to recover the objects defendant had thrown. Larner found a crack cocaine pipe and a push rod in a parking lot on the other side of the fence. At trial, Larner testified that he clearly saw defendant toss the items over the fence and that the items were within 10 feet of where defendant was apprehended. Larner further stated that he located the items "twenty seconds" after he went to look for them. The jury found defendant guilty.

Defendant filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. Citing *In re M.F.*, 315 Ill. App. 3d 641 (2000), defendant contended he had not concealed evidence because the officers in this case observed him toss the crack pipe and push rod over the fence and knew where the items were, and the officers promptly retrieved the items with no difficulty. The trial court denied defendant's motion. Defendant was then sentenced to three years' imprisonment.

Defendant appealed, arguing that the State failed to prove him guilty beyond a reasonable doubt because the items at issue were never concealed within the meaning of the obstructing justice statute. The appellate court, with one justice dissenting, affirmed. 295 Ill.

App. 3d 560. We allowed defendant's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010).


Analysis

Illinois' obstructing justice statute, section 31–4 of the Criminal Code of 1961, provides:

> "A person obstructs justice when, with intent to prevent the apprehension or obstruct the prosecution or defense of any person, he knowingly commits any of the following acts:
>
> (a) Destroys, alters, conceals or disguises physical evidence, plants false evidence, furnishes false information[.]" 720 ILCS 5/31–4(a) (West 2006).

As he did in the appellate court, defendant contends that the State failed to prove him guilty beyond a reasonable doubt of obstructing justice because he never concealed the crack pipe and push rod. To address this argument we must first determine the meaning of the word "conceal" as it is used in the obstructing justice statute.

The cardinal rule of statutory construction is to ascertain and give effect to the legislature's intent. *Abruzzo v. City of Park Ridge*, 231 Ill. 2d 324, 332 (2008). The legislature's intent is best indicated by giving the statutory language its plain and ordinary meaning. *Id*. To determine the plain meaning, we must consider the statute in its entirety and be mindful of the subject it addresses. *Orlak v. Loyola University Health System*, 228 Ill. 2d 1, 8 (2007). Our review on this issue is *de novo*. *Abruzzo*, 231 Ill. 2d at 332.

The obstructing justice statute does not define the word "conceal." When a statutory term is undefined, it is appropriate to employ a dictionary definition to ascertain its meaning. See *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 11 (2009). The obstructing justice statute was adopted in 1961. See 1961 Ill. Laws 1983, 2039 §31–4 (eff. Jan. 1, 1962). Webster's dictionary from that time contains two definitions of the word "conceal." The first definition states: "1 : to prevent disclosure or recognition of : avoid revelation of : refrain from revealing : withhold knowledge of : draw attention from : treat so as to be unnoticed ***." Webster's Third New International Dictionary 469 (1961). The second definition states: "2 : to place out of sight : withdraw from being observed : shield from vision or notice

\*\*\*." *Id.*

Before this court, defendant relies primarily on the first definition of the word "conceal." Defendant contends he did not "withhold knowledge" of the crack pipe and push rod from the police officers. To the contrary, defendant emphasizes that he was in full view of the police officers at all times and that "[t]he officers were in no doubt that [defendant] had thrown contraband–or where." Thus, in defendant's view, because both the existence and location of the evidence were fully known to the officers the evidence was not concealed. See also, *e.g.*, *People v. Mulcahey*, 72 Ill. 2d 282, 285 (1978) (noting that something may be secreted or concealed from others when it is kept from their knowledge).

The State, however, stresses the second meaning of the word "conceal." According to the State, by throwing the evidence over the fence, defendant placed it "out of sight" of the police officers. The State does not dispute that the officers knew defendant had thrown the contraband, nor does the State dispute that the officers were able to recover it in a matter of seconds. However, the State contends that the "word 'conceals' merely conveys that something has been hidden, not that it will remain hidden forever." Thus, in the State's view, defendant concealed the crack pipe and push rod and, therefore, was properly found guilty of obstructing justice. We disagree.

Courts have repeatedly rejected the proposition that temporarily removing contraband from the sight of police officers during a pursuit or arrest is sufficient, by itself, to constitute concealment for purposes of obstructing justice or tampering with evidence statutes. For example, in *In re M.F.*, 315 Ill. App. 3d 641 (2000), the defendant was standing on a landing or portion of roof over the entrance to an apartment building. A police officer was standing on the sidewalk, approximately 30 feet away. As the officer watched, the defendant twice reached into his pocket and made a throwing motion toward the street behind the officer. The police officer's flashlight was shining on the defendant's face and person but the officer did not see what the defendant had in his hands. After the defendant was apprehended by other police officers, the officer on the sidewalk looked in the direction the defendant had thrown the objects. In a matter of seconds, he found three bags containing cocaine, located approximately 10 feet away. *Id.* at 643-44.

Although the defendant had placed the cocaine out of sight of the police officer, the appellate court determined that the drugs had not been concealed within the meaning of the obstructing justice statute. In its analysis, the appellate court reviewed numerous decisions from other jurisdictions and stated:

> "the clear weight of authority from other states concludes that where a defendant merely drops, throws down, or abandons drugs in the vicinity of the defendant and in the presence and view of the police, this conduct does not constitute concealment that will support an evidence–tampering or obstruction charge, or a conviction that is additional to and separate from the ongoing possessory offense." *Id.* at 650.

The appellate court concluded:

> "even though respondent may have intended to prevent the apprehension or obstruct the prosecution of himself for the possession charge, throwing the drugs to the ground was not an act of concealment that will sustain the additional obstructing justice offense." *Id.*

A similar result was reached by the Supreme Court of Pennsylvania in *Commonwealth v. Delgado*, 679 A.2d 223 (Pa. 1996). In that case, the defendant threw a bag of cocaine onto the roof of a garage while being pursued by police. Although the drugs were out of sight while on the roof, the court determined that they had not been concealed, stating:

> "[The] act of discarding contraband in plain view of the police does not rise to a level of conduct that constitutes the destruction or concealment of evidence as contemplated by the statute. The act of throwing the bag of cocaine while being chased by the police was nothing more than an abandonment of the evidence." *Id.* at 594.

See also, *e.g.*, *McKinney v. State*, 640 So. 2d 1183, 1185 (Fla. Dist. Ct. App. 1994) ("a brief interruption of a police officer's visual contact with physical evidence that is on or near one's body is not sufficient to constitute concealment"); *Harris v. State*, 991 A.2d 1135, 1140 (Del. 2010) ("Whether the defendant briefly hides evidence on a rooftop or in his mouth, if the police perceive the act of concealment and could immediately retrieve the evidence, the

-6-

defendant has failed to 'suppress' evidence ***.").

Courts have consistently rejected the idea that placing contraband out of sight during an arrest or pursuit is sufficient, in itself, to constitute concealment because such a legal principle leads to harsh and absurd results that cannot reasonably be within the ambit of legislative intent. For example, in *State v. Fuqua*, 696 A.2d 44 (N.J. Super. Ct. App. Div. 1997), the defendant was searched at police headquarters and a package of cocaine was discovered in his socks. The court concluded that the drugs were not concealed, explaining:

> "Under what appears to be the State's theory, defendant would have been required to have the cocaine in plain view in order to avoid committing this crime because, by placing the cocaine in his socks, defendant allegedly committed a separate indictable offense. This is difficult to fathom. We assume that under the State's theory, the same conviction would be proper if the cocaine had been in defendant's pocket, or even in his briefcase. If the State is correct, all illegal substances, weapons, and even illicit reading material, would be required to be carried in plain view or else the possessor could be convicted of a third- or fourth-degree crime or of a disorderly persons offense, in addition to any other substantive offense." *Id.* at 47.

Similar reasoning was adopted in *Vigue v. State*, 987 P.2d 204 (Alaska App. 1999). In that case, the defendant made a shaking motion that looked as if he had dropped something while approaching a police officer. The officer could not see what, if anything, had fallen to the ground. After the defendant was restrained, the officer walked to where defendant had made the motion and found five rocks of crack cocaine.

The court concluded that the defendant had not concealed the drugs. In so doing, the court noted the absurd results that follow from holding that any time contraband is placed out of sight it is legally "concealed." The court observed, for example, that persons under the age of 21 who smoke cigarettes (a violation punishable only by a fine) would be subject to felony convictions and penalties if they "hid cigarettes in a pocket or purse when police officers approached," and "minor possessory offenses would often be converted to felonies with little reason." *Id.* at 211. See also, *e.g.*, *McKinney*, 640 So. 2d at 1185

(noting that it was "doubtful" the legislature intended a tampering with evidence statute to be used to prosecute persons for concealing drugs during an arrest).

We agree with the foregoing authorities. To construe the word "conceal" as the State suggests would mean that essentially every possessory offense where the contraband is not in plain view would also constitute the felony offense of obstructing justice. We do not believe the legislature intended such a result. See, *e.g.*, *Landis*, 235 Ill. 2d at 12 (we presume the legislature did not intend absurd consequences).

The State, however, counters by pointing to cases such as *People v. Brake*, 336 Ill. App. 3d 464 (2003). In *Brake*, a police officer observed a tan bag in a defendant's mouth during an arrest. The defendant swallowed the bag despite the officer's attempt to stop him from doing so. An ambulance was summoned and defendant was transported to a hospital. The hospital staff introduced charcoal to prevent the contents defendant had swallowed from being absorbed into his system, and the defendant vomited. The bag, which contained controlled substances, was recovered by police. *Id.* at 465.

On appeal, the appellate court noted that the sole issue before it was whether the defendant "was proved guilty beyond a reasonable doubt of the offense of obstructing justice based on his concealment of the tan bag containing a controlled substance." *Id.* at 466. The appellate court expressly rejected the defendant's argument that concealment was based on what the police officer knew and that he "could not conceal the bag where the officer was already aware of it and defendant's actions were undertaken in the officer's presence." *Id.* at 467. The appellate court upheld the defendant's conviction for obstructing justice, stating

> "We are persuaded that there is a distinction between throwing evidence away from the person, as in *M.F.*, and swallowing evidence in the hopes that it will go unrecovered. Such conduct constitutes an attempt to alter, conceal, or destroy the evidence and will support a charge and conviction of obstructing justice." *Id.* at 468.

In the State's view, in upholding the defendant's conviction, the appellate court in *Brake* determined that the bag of drugs was

concealed, and thus that defendant's conduct fell within the obstructing justice statute, because the bag was out of sight of the officer. We think it evident, however, that what compelled the result in *Brake*, and other similar cases, was not simply the fact that the drugs were out of sight of the police officer, but that the defendant had, in fact, materially impeded the officer's investigation. This reading is consistent with the purpose of the statute.

The subject addressed by section 31–4 is "obstructing justice." Obstruction of justice is an attempt to interfere with the administration of the courts, the judicial system, or law enforcement agencies. "The phrase 'obstructing justice' as used in connection with offenses arising out of such conduct means impeding or obstructing those who seek justice in a court or those who have duties or powers of administering justice in courts." 67 C.J.S. *Obstructing Justice* §1, at 67 (2002). Thus, in enacting section 31–4, the legislature intended to criminalize behavior that *actually* interferes with the administration of justice, *i.e.*, conduct that "obstructs prosecution or defense of any person."

The facts of *Brake* are not before us and we express no opinion on the correctness of that decision. However, we have no disagreement with the proposition that a defendant who places evidence out of sight during an arrest or pursuit has "concealed" the evidence for purposes of the obstructing justice statute if, in doing so, the defendant actually interferes with the administration of justice, *i.e.*, materially impedes the police officers' investigation. This idea has been expressed by other authorities. See, *e.g.*, *Anderson v. State*, 123 P.3d 1110, 1119 (Alaska App. 2005) ("[t]he test appears to be whether the defendant disposed of the evidence in a manner that destroyed it or that made its recovery substantially more difficult or impossible"); *Harris*, 991 A.2d at 1138 (no concealment where contraband is "immediately retrievable"); 18 U.S.C.S. app. §3C1.1 (2010) (under federal sentencing guidelines, attempting to swallow or throw away a controlled substance is not, standing alone, sufficient to warrant an adjustment for obstruction unless it results in a "material hindrance" to the official investigation).

In the case at bar, defendant threw the crack pipe and push rod over a fence, where they landed approximately 10 feet away. The police officers saw him throw the items and were able to walk around

the fence and recover them within 20 seconds. Although the items were briefly out of the officers' sight, defendant did not materially impede the officers' investigation. Accordingly, defendant did not "conceal" the crack pipe and push rod within the meaning of the obstructing justice statute.

In upholding defendant's conviction, the appellate court below also offered the following:

> "Defendant did not merely drop the evidence along his flight path, but threw it over a six-foot, wooden privacy fence. Defendant could have reasonably anticipated that the police may not see him throw the evidence over the fence. Fortunately for the police, the area where defendant threw the evidence happened to be a well-lit, empty parking lot, making retrieval of the evidence possible.

> For the foregoing reasons, defendant's affirmative act constitutes concealment of the evidence under the obstruction-of-justice statute." 395 Ill. App. 3d at 567.

As defendant points out, this reasoning is unpersuasive. Under the appellate court's logic, the offense of obstructing justice would be established where the State proves only that a defendant "anticipated" the ability to conceal an item–not that he actually concealed anything. In other words, the appellate court's reasoning eliminates the *actus reus* from the obstructing justice statute. We decline to adopt this interpretation of the statute.

Conclusion

Because defendant did not "conceal" the crack pipe and push rod within the meaning of the obstructing justice statute, the State failed to prove him guilty of that offense beyond a reasonable doubt. Accordingly, the judgments of the appellate and circuit courts are reversed.

Appellate court judgment reversed;
circuit court judgment reversed.

JUSTICE FREEMAN, specially concurring:

I agree that materiality is a necessary component of Illinois' obstructing justice statute (720 ILCS 5/31–4(a) (West 2006)). As today's opinion makes clear, a defendant who places evidence out of sight during an arrest or pursuit has "concealed" the evidence for purposes of the obstructing justice statute if, in doing so, he "materially impedes" a police investigation. Slip op. at 9. I write separately to emphasize that this construction of the statute conforms with the intent of the legislature.

The court correctly notes the importance of *In re M.F.*, 315 Ill. App. 3d 641 (2000), and *People v. Brake*, 336 Ill. App. 3d 464 (2003), in resolving the issue presented. Slip op. at 5-6, 8-9.

In *M.F.*, the defendant was standing on the front landing or roof over the entrance to a building when he threw bags of drugs down from the landing and onto the ground in the vicinity of an officer who was shining a flashlight on the defendant, saw his conduct, and recovered the drugs within seconds. The appellate court reversed the defendant's conviction for obstructing justice, noting: "Under the circumstances, it does not appear that this act was likely to either destroy the evidence or make recovery less likely." *M.F.*, 315 Ill. App. 3d at 650.

In *Brake*, where the court upheld the defendant's conviction for obstructing justice, a police officer observed a bag in the defendant's mouth during an arrest, and the defendant swallowed it. The defendant was transported to a hospital, where the bag, which contained controlled substances, was recovered by police. On appeal, the appellate court rejected the defendant's argument that his case was analogous to *M.F.* The court stated:

> "We are persuaded that there is a distinction between throwing evidence away from the person, as in *M.F.*, and swallowing evidence in the hopes that it will go unrecovered. Such conduct constitutes an attempt to alter, conceal, or destroy the evidence and will support a charge and conviction of obstructing justice." *Brake*, 336 Ill. App. 3d at 468.

*M.F.* and *Brake* stand for the notion that materiality is an element of the obstructing justice statute. It is significant, in my view, that the

-11-

General Assembly has not seen fit to change section 31–4(a) in the time since these cases were decided. Where the legislature chooses not to amend terms of a statute after judicial construction, it is presumed that it has acquiesced in the court's statement of legislative intent. *R.D. Masonry, Inc., v. Industrial Comm'n*, 215 Ill. 2d 397, 404 (2005). The materiality component of the obstructing justice statute thus has been part of Illinois jurisprudence for at least eight years, since *Brake* was decided.

Notwithstanding the foregoing, the dissent argues the obstructing justice statute "does not require, as the majority finds, that a defendant actually 'interfere[ ] with the administration of justice, *i.e.*, materially impede[ ] the police officers' investigation.' " Slip op. at 18 (Thomas, J., dissenting, joined by Garman and Karmeier, JJ.). The dissent contends, in addition, that neither *M.F.* nor *Brake* precludes defendant's conviction, and "there was thus no need for a legislative change to render culpable the sort of conduct that occurred in this case." *Id*. at 19.

With regard to *M.F.*, the dissent insists it is distinguishable from the case at bar, noting that the appellate court majority below took this same view. *Id*. However, the dissenting justice below believed the two cases were "virtually indistinguishable." 395 Ill. App. 3d at 567 (Pope, J. dissenting).

> "The Second District found M.F.'s conduct did not constitute obstructing justice based on concealment of evidence, because he threw the drugs from a rooftop in the vicinity of a police officer and the drugs were recovered within seconds. *** In the case *sub judice*, the officers were only a short distance behind defendant, saw him throw the objects, and recovered the same, in an open, well-lit area within seconds. Defendant simply did not conceal anything." 395 Ill. App. 3d at 567-68 (Pope, J., dissenting).

I agree in that I believe the two cases are "virtually indistinguishable."

With regard to *Brake*, the dissenting justices argue it is distinguishable from the case at bar and *M.F.* Slip op. at 20 (Thomas, J., dissenting, joined by Garman and Karmeier, JJ.). I agree. That is, indeed, my point. As the court in *Brake* emphasized, there is a distinction between "throwing evidence away from the person, as in

-12-

*M.F.*, and swallowing evidence in the hopes that it will go unrecovered." *Brake*, 336 Ill. App. 3d at 468. The court continued: "Such conduct constitutes an attempt to alter, conceal, or destroy the evidence and will support a charge and conviction of obstructing justice." *Brake*, 336 Ill. App. 3d at 468.

*M.F.* is "virtually indistinguishable" from the case at bar (395 Ill. App. 3d at 567 (Pope, J., dissenting)) but is, as the dissent here states, distinguishable from *Brake*. The difference between them is that, in *M.F.,* as in the case at bar, the conduct at issue was not "likely to either destroy the evidence or make recovery less likely" (*M.F.*, 315 Ill. App. 3d at 650) and thus did not *materially impede* the investigation. In *Brake*, by contrast, the conduct in question–swallowing the evidence–constituted "an attempt to alter, conceal, or destroy the evidence" (*Brake*, 336 Ill. App. 3d at 468) and did, in fact, *materially impede* the investigation. Under *M.F.* and *Brake*, materiality is thus an element of the obstructing justice statute.

Thus, I continue to believe that the presumption of legislative acquiescence plays an important role in resolving this question of statutory construction. The fact that the legislature has not changed the statute indicates to me, at least, that it agrees with the reasoning contained in the authority cited in the court's opinion today.

For these reasons and those set forth in the court's opinion, I agree that defendant's conviction must be reversed.


JUSTICE THOMAS, dissenting:

The majority states that it has no quarrel with the proposition that a defendant who places physical evidence out of the sight of an officer during an arrest or pursuit is guilty of violating the obstruction of justice statute. But the majority then tacks on an additional requirement not found in the plain language of the statute, by requiring that a defendant must ultimately succeed in "materially imped[ing] the police officers' investigation." Slip op. at 9. Because the plain and unambiguous language of the statute does not brook the addition of this extra element, I respectfully dissent.

The facts of this case are not in dispute. On the night of March 24, 2006, Decatur police officer Chad Larner responded to a report of a

theft at a local gas station. Larner left the scene at the gas station to look for the suspect who was described as a thin, clean-shaven black male wearing nice slacks and dressy-casual clothing. A block away from the gas station, Officer Larner spotted defendant, who matched the description of the suspect. Larner stopped defendant in a nearby parking lot and asked for identification. Defendant identified himself, and Decatur police officer Kathleen Romer soon arrived at the scene as backup.

Defendant and the officers continued talking, but defendant began acting strangely. Defendant jumped around, fidgeted nervously, and threatened to urinate on the squad car. The officers communicated defendant's name via radio to their dispatcher. After a few moments, the dispatcher radioed back. At that point, defendant fled into the night through a parking lot and down an alley. The officers gave chase down the alley, whereupon they observed defendant, while running, reach into his pocket, take out a thin, rod-like object, and throw it over a six-foot high wooden privacy fence. The tallest of the two officers was only 5 foot 11 inches. And once the item was thrown, neither officer had sight of it until it was later recovered. The pursuit of defendant continued a short distance longer. Officer Romer then drew her Taser and ordered defendant to stop. Defendant finally complied by turning around and lying on the ground. The officers then handcuffed and arrested him.

Officer Larner went around to the other side of the fence to search for the object defendant had thrown. There, Larner saw a few feet of landscaping next to the fence, with the rest of the area comprised of an empty asphalt or concrete parking lot. The parking lot near the street where the officers first encountered defendant was well lit, but it was darker further down the alley where defendant ran. Officer Larner, however, was quickly able to find a thin, silver rod with a rubber tip on one end and severe burn marks on the other, as well as a second smaller rod. Based on their training and experience, both Officers Larner and Romer recognized the objects recovered as a crack pipe and push rod. A push rod is a tool used to pack drugs into a crack pipe. The officers then continued searching the parking lot for any other items that might have been discarded by defendant, but they found nothing else.

After hearing the foregoing evidence, the jury convicted

-14-

defendant of one count of obstructing justice. Defendant filed a posttrial motion, arguing that based on *In re M.F.*, 315 Ill. App. 3d 641 (2000), he merely abandoned the evidence and did not "conceal" it, as required under section 31–4(a) of the Criminal Code of 1961, the obstructing justice statute. The circuit court rejected this argument and denied defendant's posttrial motion. A majority of the appellate court affirmed, rejecting defendant's claim that throwing drug paraphernalia over a six-foot wooden privacy fence did not conceal evidence. 395 Ill. App. 3d 560, 563-64.

This case presents a question of statutory interpretation, which this court reviews *de novo*. *People v. Brooks*, 221 Ill. 2d 381, 388 (2006). This court's primary objective when undertaking to interpret a statute is to give effect to the intent of the legislature. *People v. Phelps*, 211 Ill. 2d 1, 15 (2004). The best indicator of that intent is the language of the statute itself–if the statute's language is unambiguous, then it is should be applied as written without using aids of statutory construction. *People v. Grever*, 222 Ill. 2d 321, 328-29 (2006). Moreover, this court will not depart from the plain meaning of a statute by reading into it exceptions, limitations, or conditions that conflict with the express legislative intent. *Hawes v. Luhr Brothers, Inc.*, 212 Ill. 2d 93, 105 (2004).

The statute at issue in this case provides in relevant part that "[a] person obstructs justice when, with intent to prevent the apprehension or obstruct the prosecution or defense of any person, he knowingly *** *conceals* *** physical evidence ***." (Emphasis added.) 720 ILCS 5/31–4(a) (West 2008). Thus, the crime of obstructing justice has two elements: (1) intent to prevent or obstruct apprehension or prosecution; and (2) concealment. Because defendant did both, I would affirm his conviction. The statute does not require, as the majority finds, that a defendant actually "interfere[ ] with the administration of justice, *i.e.*, materially impede[ ] the police officers' investigation." See slip op. at 9.

Defendant does not dispute that when he ran from police and threw his crack pipe and push rod over the privacy fence, he intended to obstruct his own apprehension and prosecution. See, *e.g.*, *State v. Lasu*, 768 N.W.2d 447, 451 (Neb. 2009) ("It is reasonable to infer that [the defendant] threw away his marijuana because he was afraid of being arrested and searched–in fact, it is hard to imagine another

-15-

reasonable explanation for his actions."). Thus, the only question in this case is whether defendant "concealed" evidence as required by section 31–4(a).

Neither the word "conceal" nor "concealment" is defined in the Criminal Code of 1961. See 720 ILCS 5/1–1 *et seq.* (West 2008). It is well established that if a term is not specifically defined in a statute indicating a contrary legislative intent, the term must be given its ordinary and popularly understood meaning. See, *e.g.*, *People v. Bailey*, 167 Ill. 2d 210, 229 (1995); *People v. Christopherson*, 377 Ill. App. 3d 752, 753-54 (2007). The primary and popularly understood dictionary definition of "conceal" is "to hide; withdraw or remove from observation; cover or keep from sight: *He concealed the gun under his coat.*" The Random House Dictionary of the English Language 303 (Unabridged ed. 1983). Similarly, the dictionary definition of "concealment" is "an act by which one prevents or hinders the discovery of something *** the act of removing from sight or notice; hiding." Black's Law Dictionary 306 (8th ed. 2004).

Applying the above-noted definitions to the facts of this case shows that the element of concealment was clearly established. Defendant, who was being questioned by police officers, suddenly sprinted away from them, at night, and threw drug paraphernalia over a six-foot, wooden fence. In other words, defendant "withdr[e]w or remove[d] from observation" and "[kept] from sight" the evidence in question. Or applying the Black's Law Dictionary definition, defendant "hinder[ed] the discovery of something," "removed" the evidence "from sight or notice," and "hid[ ]" it from view. In short, defendant deliberately removed evidence from the officers' sight in a way that made it less likely to be found. Thus, because defendant "concealed" evidence in the ordinary sense of the word, he obstructed justice.

The majority's conclusion that a defendant must ultimately succeed in either destroying the evidence or "materially impeding the police officers' investigation" is not supported by the text of the statute and rests on a small amount of poorly reasoned authority. There is nothing in the common definition of "conceal" that requires that an item be permanently removed from sight or hidden. It is enough that the evidence is removed from sight or hidden, even if only for a short time before it is found or located. Looking at whether

the evidence was actually recovered–or at how easily it was recovered–improperly shifts the statutory inquiry away from its rightful focus on defendant's actions at the time of the crime onto how quickly and competently police reacted to defendant's actions after the concealment had been completed. See, *e.g.*, *Brogan v. United States*, 522 U.S. 398 (1998); *People v. Manning*, 334 Ill. App. 3d 882 (2002).

The United States Supreme Court's decision in *Brogan* is instructive. There, the defendant argued that he could not be convicted of making a false statement to federal investigators because the investigators knew his statements were false when made. Thus, the defendant reasoned, because the officers were not actually deceived by the false statements, he did not commit a crime. Defendant also argued that the statute should be interpreted more narrowly than its plain language because the evil to be prevented was the "perversion of governmental functions." *Brogan*, 522 U.S. at 401-02. The Supreme Court soundly rejected both contentions: "It could be argued, perhaps, that a *disbelieved* falsehood does not pervert an investigation. But making the existence of this crime turn upon the credulousness of the federal investigator (or the persuasiveness of the liar) would be exceedingly strange; such a defense to the analogous crime of perjury is certainly unheard of." (Emphasis in original.) *Brogan*, 522 U.S. at 402, 139 L. Ed. 2d at 836, 118 S. Ct. at 809. The Court continued by stating that "it is not, and cannot be, our practice to restrict the unqualified language of a statute to the particular evil that Congress was trying to remedy–even assuming that it is possible to identify that evil from something other than the text of the statute itself." *Brogan*, 522 U.S. at 403.

The decision of our appellate court in *Manning* is similarly instructive. The defendant in that case argued that he had not "concealed" his daughter from his spouse for 15 days–as required by the child abduction statute (720 ILCS 5/10–5(b)(6) (West 2000))–because his wife was able to discover the daughter's location from other sources. *Manning*, 334 Ill. App. 3d at 887, 889. The court rejected that argument, stating that "[i]n determining whether a defendant committed a criminal act, the focus must be on *the defendant's* state of mind." (Emphasis added.) *Manning*, 334 Ill. App. 3d at 887. The court then employed the common dictionary definition

of "conceal" and determined that the jury reasonably concluded that the defendant concealed his daughter from his wife for 15 days, even though the defendant's wife may have had actual knowledge of her daughter's whereabouts during several of those days. *Manning*, 334 Ill. App. 3d at 889.

Here, just as the defendants did in *Brogan* and *Manning*, defendant seeks to make his conviction turn on the cognizance of others. But this is not the proper inquiry. As noted above, defendant "concealed" evidence within the plain and ordinary meaning of that term and was ultimately caught doing it. The fact that he did not conceal the evidence permanently or very well–and that police acted quickly to uncover his concealment–should have no bearing on whether defendant committed the crime in the first instance.

The majority's claim that the *actus reus* of the crime was never accomplished in this case rests on a faulty construction of what it means to "conceal" evidence within the meaning of the statute. As I have already explained, defendant committed the completed act of concealment when he in fact concealed the evidence by tossing it out of sight over a privacy fence as he fled from police. Just as the crime of perjury does not require as part of the *actus reus* that others actually be deceived, the present crime did not require that the offender ultimately be successful in materially impeding the officers' investigation, as the majority believes. Moreover, the majority's standard appears to be unworkable because it does not explain at what point an investigation would be impeded. According to the majority, the amount of time that the evidence in this case was concealed from officers is too short to support a conviction. But the majority never explains what, if any, amount of time from the act of placing evidence out-of-sight until its discovery would support a conviction. Would the majority consider a two-minute search for evidence too short to support a finding that an investigation was "materially impeded," but affirm a conviction if the evidence were only finally discovered after four days? The answers are unclear under the standard proposed by the majority. But such difficult line drawing would be entirely unnecessary under a plain-text reading of the statute, as any affirmative act of concealment combined with the requisite intent would support a conviction.

The majority opines that under the State's plain-text reading of

the statute, "essentially every possessory offense where the contraband is not in plain view would also constitute the felony offense of obstructing justice." Slip op. at 8. The majority is apparently concerned that persons who carry illegal items in their pockets, purses or briefcases would be guilty of obstructing justice under a plain reading of the statute. But I believe that the majority's fears are unfounded, as it is unlikely that the intent element of the offense could be satisfied by these routine methods of carrying items. I also believe that what happened in the present case can be easily distinguished from the situation involving a mere possessory offense. It could be said that carrying an illegal item on one's person is not an affirmative act that constitutes concealment, and given that carrying something in one's pocket or handbag is a convenient way to carry any item, there is no evidence of the "intent to prevent the apprehension or obstruct the prosecution" that the statute requires. See 720 ILCS 5/31–4(a) (West 2008).

The majority's concerns are also irrelevant to this case. Defendant was not convicted of obstruction of justice because he put a crack pipe in his pocket or briefcase before going out into the world. Nor did he simply panic and run at the first sight of police. Rather, after talking with police officers for several minutes while they conducted their investigation, defendant deliberately sprinted away from them, at night, and disposed of his crack pipe by pitching it over a wooden, privacy fence. This was not an act of continuing possession; it was a separate, intentional act that had no purpose other than to thwart a specific, ongoing investigation.

Furthermore, even accepting as proper a rule that a defendant who abandons contraband immediately upon seeing a police officer does not conceal it, such a rule would not be availing to defendant in this case. Whatever else the obstruction of justice statute proscribes, it must at least prohibit a defendant from taking the sort of affirmative, evasive steps that defendant took here to conceal evidence of his crimes once a police investigation was in process.

For that reason, the special concurrence is mistaken in its conclusion that the principle of legislative acquiescence has an "important role" in resolving the issue of statutory construction involved in this particular case. See slip op. at 12 (Freeman, J., specially concurring). The special concurrence claims that the fact

that the legislature has not amended the statute after the appellate court's opinions in *M.F.* and *People v. Brake*, 336 Ill. App. 3d 464 (2003), precludes defendant's conviction in the present case. But I do not believe that the appellate court's holdings in those cases precludes defendant's conviction here, and there was thus no need for a legislative change to render culpable the sort of conduct that occurred in this case.

In *M.F.*, police spotted the defendant on the roof over an entrance to a building where they were executing a search warrant. An officer told the defendant not to move while shining a flashlight on the defendant. The defendant remained in the same spot, but twice reached into his pocket and threw baggies of cocaine toward the officer within 10 feet of him. It is not entirely clear whether the officer ever lost sight of the items tossed in his direction. At any rate, he recovered them within seconds. After discussing decisions from other jurisdictions, the appellate court in *M.F.* concluded that where a defendant abandons evidence by dropping it or throwing it to the ground in the presence and view of police, this conduct does not constitute concealment that will support a conviction under the obstruction statute. *M.F.*, 315 Ill. App. 3d at 650. Notably, *M.F.* did not hold that materially impeding the police officers' investigation is a necessary element of the obstruction statute. Additionally, it must be emphasized that *M.F.* carefully limited its holding to the specific circumstances of that case.  See *M.F.*, 315 Ill. App. 3d at 650.

The present case is of course distinguishable on the facts from *M.F.*, and the holding in *M.F.* does not preclude a conviction here. Indeed, the trial judge and two justices of the appellate court found *M.F.* clearly distinguishable from the present case. In that regard, the appellate court in this case stated as follows:

> "[I]n the case *sub judice*, defendant did not merely abandon the evidence by throwing it to the ground in the vicinity and view of the police officer who was shining a flashlight on defendant. Here, defendant took the more affirmative act of throwing the evidence over a privacy fence and out of the view of the police while defendant was fleeing from the police down an alley at night." 395 Ill. App. 3d at 565.

The special concurrence's reliance upon *Brake* for a legislative acquiescence analysis is even more problematic. *Brake* did not

involve a case where the defendant fled from police and threw evidence out of sight of police. Instead, it considered only whether a defendant's swallowing of evidence in the immediate presence of an arresting officer, and where the evidence was in fact recovered, will support an obstruction of justice charge and conviction. *Brake* answered the question in the affirmative. *Brake*, 336 Ill. App. 3d at 468. In so doing, *Brake* noted and rejected the defendant's attempt to analogize his case to *M.F. Brake* explained that *M.F.* reasoned "that throwing 'bags of drugs down from the landing and onto the ground in the vicinity of and in view of the police officer who was shining a flashlight on respondent, saw his conduct, and recovered the drugs within seconds of the act' was not 'likely to either destroy the evidence or make recovery less likely.' " *Brake*, 336 Ill. App. 3d at 467 (quoting *M.F.*, 315 Ill. App. 3d at 650). *Brake* continued by noting that *M.F.* had "distinguished its facts from precisely the situation in this case, where a defendant swallowed the evidence, and noted that such conduct may support evidence tampering sufficient to support a conviction." *Brake*, 336 Ill. App. 3d at 467. Nothing in *Brake* can be interpreted as purporting to fashion a requirement that a defendant materially impede an investigation to support a conviction. The special concurrence mistakenly assumes that the requirement of *M.F.*–that the conduct of the defendant make "recovery less likely"–is the equivalent of the majority's requirement–that the defendant "materially impede an investigation." In my opinion, if evidence is less likely to be recovered as a result of certain actions of a defendant, it can still be likely to be recovered, albeit less likely than it was before the actions were taken. In the present case, defendant's flight from police coupled with his tossing of the items in a dark alley over a six-foot privacy fence satisfied the *M.F.* "less likely" standard. In *M.F.,* by contrast to the present case, the evidence was actually *more likely* to be recovered because of the defendant's actions in that case where he tossed the items down in the direction of and in view of police and they were in fact recovered within seconds. It appears that the majority opinion does not simply adopt the "less likely" standard in this case because to do so would lead to a different result than the "materially impedes an investigation" standard that the majority actually adopts.

The special concurrence makes two points to support its judicial

acquiescence theory, neither of which has much merit. First, the special concurrence argues that because the dissenting justice on the appellate court in this case found *M.F.* "virtually indistinguishable" from the present case (over the disagreement of the majority), *M.F.* is in fact "virtually indistinguishable." See slip op. at 12 (Freeman, J., specially concurring) (citing 395 Ill. App. 3d at 567-68 (Pope, J., dissenting)). As I have already clearly explained above, however, *M.F.* is distinguishable from the present case and *M.F.* carefully limited its holding to the specific circumstances presented, and thus nothing more need be said on this point. Second, the special concurrence argues that it is "indeed, [its] point" that *Brake* is distinguishable from *M.F.* See *id.* It is true that *Brake* is distinguishable from *M.F.*, but I fail to see how this supports a judicial acquiescence theory. The statement in *Brake* that " '[s]uch conduct, [*i.e.*, swallowing evidence] "constitutes an attempt to alter, conceal, or destroy the evidence and will support a charge and conviction of obstructing justice' " (*id.* at 13 (quoting *Brake*, 336 Ill. App. 3d at 468)) makes perfect sense given the court's holding affirming defendant's conviction. The fact that *Brake* made a distinction between the throwing of evidence away under the facts in *M.F.* and the swallowing of evidence in the case before it did not and could not purport to set forth the parameters of what might constitute concealment in all the situations where evidence is tossed away from police, especially where, unlike *M.F.*, the evidence is indisputably discarded out of sight. The fact that *Brake* found "throwing evidence away" distinguishable from swallowing evidence is thus unremarkable under the circumstance of that case where the court was being asked to analogize its case to the specific facts of *M.F.*, a case where the appellate court clearly limited its holding to the specific circumstances before it.[2] At any rate, any ruling in *Brake* that would

---

[2]*M.F.* limited its holding as follows:

> "In the present case, we hold that the evidence of concealment was insufficient to sustain the convictions of obstruction of justice. Respondent threw bags of drugs down from a landing and onto the ground in the vicinity and in the view of the police officer who was shining a flashlight on respondent, saw his conduct, and recovered the drugs within seconds of the act. Under the circumstances, it

have claimed to reach facts not actually before it would have been mere *dicta*, which obviously would not bind the legislature on a judicial acquiescence theory.

Given that neither the fact patterns nor the holdings of *M.F.* and *Brake* support the majority's addition of the extra element to the statute of "materially imped[ing] the police officers' investigation" (see slip op. at 9), the concept of legislative acquiescence relied upon by the special concurrence is not an appropriate aid in resolving the question of statutory construction before us in this case. However, in light of the majority's holding today, I would urge the legislature to remedy the majority's incorrect interpretation of the statute so that the statute can again be construed to prohibit the sort of affirmative act of concealment that occurred in the present case, where defendant fled from police officers down a dark alley and placed evidence out of their sight.

The foreign-jurisdiction authority cited by the majority is not persuasive for a number of reasons. As stated earlier, I do not believe that the outcome of these cases should turn on whether others were actually fooled by a defendant's subterfuge. Additionally, many of the cases cited can be distinguished from the present case on their facts. See, *e.g.*, *Harris v. State*, 991 A.2d 1135, 1138 (Del. 2010) (the defendant was only successful in *partially* concealing the item of contraband from the officers view and it was "immediately retrievable"); *Anderson v. State*, 123 P.3d 1110, 1118 (Alaska App. 2005) (it does not appear that the officers ever lost sight of the items the defendant tossed away: "Anderson's act of tossing the handgun, magazine, and ammunition out of the car in the sight of the police did nothing to disguise the evidentiary value of these items."); *State v. Fuqua*, 696 A.2d 44 (N.J. Super. Ct. App. Div. 1997) (defendant did not commit an affirmative act of concealment; rather, drugs were discovered on the defendant's person during a police search).

Finally, the majority does not discuss the cases that have reached

---

does not appear that this act was likely to either destroy the evidence or make recovery less likely. Therefore, *** [the defendant's act of] throwing drugs on the ground was not an act of concealment." *M.F.*, 315 Ill. App. 3d at 650.

the contrary holding that an affirmative act of tossing evidence away to avoid apprehension or prosecution is sufficient to constitute the offense of tampering with evidence or obstruction of justice. See, *e.g.*, *Pennewell v. State*, 977 A.2d 800 (Del. 2009) (reaffirmed earlier holding in *Hunter*, noting that it was "not a close case;" *Hunter* had affirmed tampering conviction where the defendant had tossed drugs out of car window while being pursued by, and in view of, police); *Hunter v. State*, 815 A.2d 730, 737 (Del. 2002) (affirmed tampering conviction as "not a close case" where the defendant pitched drugs out car window and they were "recovered almost immediately"); *State v. Harley*, 982 P.2d 1145 (Utah Ct. App. 1999) (affirmed tampering conviction where the defendant tossed weapon out of window while being followed by police with lights and siren activated and police recovered the weapon near where it was tossed); *State v. Jennings*, 666 So. 2d 131, 133 (Fla. 1995) (tossing evidence away in the presence of police can "amount to tampering or concealing evidence"); *Hayes v. State*, 634 So. 2d 1153 (Fla. Dist. Ct. App. 1994) (upheld tampering conviction where the defendant while fleeing police dropped baggie of cocaine into a drainage outlet, and the wet baggie was retrieved by police from the drainage system). The decision in *Jennings* is particularly persuasive. There, the Supreme Court of Florida overruled an earlier appellate court decision "to the extent it [could] be read to mean that tossing evidence away in the presence of a law enforcement officer does not, as a matter of law, constitute a violation of the [tampering with evidence] statute." The Florida Supreme Court continued by noting: "Depending upon the circumstances, such an act could amount to tampering or concealing evidence. An affirmative act of throwing evidence away constitutes more than mere abandonment." *Jennings*, 666 So. 2d at 133.

In sum, the cases that have affirmed convictions for tampering or obstruction when a defendant discards items out of sight while being pursued by police are more persuasive than the cases relied upon by the majority. Moreover, the majority's interpretation of the statute is not consistent with its plain language. For all of the foregoing reasons, I would affirm defendant's conviction for obstruction of justice.

JUSTICES GARMAN and KARMEIER join in this dissent.

-24-