# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**People v. Harris, 2013 IL App (1st) 120498**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID HARRIS, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-12-0498 |
| Filed | September 10, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from the new sentences imposed on defendant for first degree murder and attempted armed robbery following the commutation of the death sentence imposed for first degree murder, the appellate court rejected defendant's contentions that the trial court erred in excluding evidence of his innocence, that consecutive sentences were improperly imposed, that the murder sentence was excessive and that the extended term violated *Apprendi*, since claims of innocence should have been raised in a successive postconviction petition, consecutive sentences were appropriate where the victim was shot during an attempted armed robbery, the 90-year sentence for murder was not disproportionate to the offense, and any *Apprendi* violation based on the victim's age was harmless. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 93-CR-15879; the Hon. Thomas V. Gainer, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael J. Pelletier, Alan D. Goldberg, and Darrel F. Oman, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg and Janet C. Mahoney, Assistant State's Attorneys, of counsel), for the People.

Panel

PRESIDING JUSTICE QUINN delivered the judgment of the court, with opinion.

Justices Harris and Connors concurred in the judgment and opinion.

## OPINION

¶ 1        In 1995, defendant David Harris was found guilty of first degree murder and attempted armed robbery. He was sentenced to death for the murder conviction, and his conviction and sentence were affirmed on direct appeal. *People v. Harris*, 182 Ill. 2d 114 (1998).

¶ 2        Thereafter, defendant sought relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2010)). The circuit court summarily dismissed his petitions; however, the supreme court reversed in part and remanded the cause for an evidentiary hearing on the issue of trial counsel's alleged failure to investigate and present evidence in mitigation at the capital sentencing hearing. *People v. Harris*, 206 Ill. 2d 293 (2002). On January 10, 2003, however, before a hearing was held, the then-Governor commuted defendant's death sentence to a term of natural life imprisonment without the possibility of parole. The circuit court then, on motion of the State, dismissed defendant's postconviction petitions on the grounds that the Governor's act of commutation rendered moot defendant's claim of ineffective assistance of counsel. This court similarly dismissed defendant's appeal, citing *People v. Watson*, 347 Ill. App. 3d 181 (2004), and the numerous other cases which had found that any and all sentencing issues raised by a commuted defendant are rendered moot by the Governor's act of commutation. *People v. Harris*, 357 Ill. App. 3d 330, 332-34 (2005).

¶ 3        Defendant next initiated federal *habeas corpus* proceedings, and on June 5, 2008, the United States District Court for the Northern District of Illinois granted defendant an evidentiary hearing on his claim that trial counsel was ineffective for failing to investigate and present mitigating evidence at his capital sentencing hearing. *United States ex rel. Harris v. McCann*, 558 F. Supp. 2d 826 (N.D. Ill. 2008). On August 8, 2008, the district court entered a conditional writ of *habeas corpus*, ordering that defendant be given a new sentencing hearing.

¶ 4        Following a new sentencing hearing, defendant was sentenced to consecutive terms of 90 years' imprisonment for first degree murder and 15 years' imprisonment for attempted

armed robbery. He now appeals, contending: (1) that the trial court erred in excluding discovery and evidence indicating that he was factually innocent of the charges against him; (2) that the trial court erred in imposing consecutive sentences where no bodily injury occurred during the commission of the triggering offense; (3) that his 90-year sentence for first degree murder is excessive in light of certain mitigating factors; and (4) that the trial court sentenced him to an extended term in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). For the following reasons, we affirm.

¶ 5                                    I. BACKGROUND

¶ 6                                   A. Evidence at Trial

¶ 7        The record shows, in relevant part, that on the evening of June 7, 1993, defendant and several companions were riding in a car driven by Howard McClinton and discussing a movie about carjacking, called "Menace II Society," when McClinton pulled into a parking lot near 79th and Calumet Streets to speak with some girls. It turned out that the girls did not want to speak with him; however, McClinton identified a potential carjacking victim, Clifford Chase, who was leaving the Chatham Food Center at the time. As Chase was entering his car, McClinton pulled up near him and handed a gun to another passenger, Antoine Moore, telling him to "Jack him." Moore then went and tapped on the window of Chase's car, but Chase did not open the door and started the ignition instead. At that point, Moore told Chase to get out of the car and tapped on his window with the gun, but Chase tried to back up. Moore then said, "Bust him," and defendant jumped out of the car and shot Chase twice. As the group fled, they laughed about the shooting. Clifford Chase ultimately died as a result of a gunshot wound to the head.[1]

¶ 8                           B. The Capital Sentencing Hearing

¶ 9        After the jury found defendant guilty of first degree murder and attempted armed robbery, a capital sentencing hearing was held before the trial court. At that hearing, the State introduced a certified birth certificate of defendant showing that he was over 18 years old at the time of the offense and the signed jury verdict forms for intentional and knowing murder and attempted armed robbery. Defendant stipulated to his eligibility for the death penalty, and the court also found that he was eligible for a sentence of death.

¶ 10       In aggravation, the State initially introduced victim impact statements from Clifford Chase's widow, Bernice, and his two daughters Nona Ocloo and Olivia Chase. It then called multiple witnesses who testified about defendant's past criminal activity, which included two incidents apiece of armed carjacking and drug possession. The State entered into evidence a certified statement of conviction showing that on June 24, 1992, defendant pleaded guilty in one of the drug possession cases and received 13 months' probation. The State further presented testimony concerning multiple rules violations by defendant during his

---

[1]The foregoing facts are contained, in greater detail, in the supreme court's opinion in *People v. Harris*, 182 Ill. 2d 114 (1998).

incarceration. These incidents ranged from essentially innocuous violations, like moving back and forth between different cells and interfering with the count, to very serious violations, such as possessing homemade knives in his cell and, in one instance, participating in "jumping" another inmate.

¶ 11     The State lastly called Assistant State's Attorney (ASA) Peggy Chiampas, who interviewed defendant and was present for the court-reported statement he gave on June 15, 1993. She testified that defendant never expressed remorse for shooting Clifford Chase and that his demeanor when admitting to the shooting was "[c]ool, calm and collected." She also read into the record a portion of defendant's court-reported statement in which defendant stated that he had been a member of the Gangster Disciples for about five years and held the rank of assistant regent. Defendant stated that his duty was to make sure laws and policies were not broken and to impose discipline in the event that they were, and he described the range of discipline as follows: "At the least I would do is a verbal warning and at the most I would do is to violate or beat them up." Defendant stated that he carried a ".38" that he obtained from a dope fiend for $50, that the gun was loaded with five bullets when he bought it, and that he fired it twice to test it.

¶ 12     In mitigation, the defense did not present any witnesses, but the parties stipulated that a police report prepared in connection with the armed carjacking of Edwina Harrison, one of the carjackings mentioned in aggravation, described the gunman as 28 years old and 5 feet 6 inches tall. At the time of that carjacking, defendant was 18 years old and about 6 feet 1 inch tall.[2] Counsel also submitted 17 letters written by defendant's friends and family in which the authors reflected on defendant's positive qualities and expressed disbelief that he could have committed murder. In allocution, defendant stated that he had been "wrongly accused of doing a crime that I did not commit" and lamented that he would be taken away from his family.

¶ 13     The trial court ultimately found no sufficient mitigating factor to preclude the imposition of the death penalty and thus sentenced defendant to death for the murder of Clifford Chase. The court did not impose a sentence on defendant's attempted armed robbery conviction.

¶ 14                                        C. Resentencing

¶ 15     As noted above, on August 8, 2008, the United States District Court for the Northern District of Illinois ordered that defendant be given a new sentencing hearing. Before that hearing was held, the trial court on remand ruled that it would read and consider the transcripts from defendant's original sentencing hearing.

¶ 16     At the resentencing hearing, Olivia Chase testified in aggravation that her father was about 70 years old when he was murdered. She also described the deteriorating condition of Bernice Chase, Clifford's widow, after his murder and noted that Bernice died the previous spring. She and her sister, Nona Ocloo, prepared new victim impact statements for the resentencing hearing.

---

[2]This is defendant's height in the presentence investigation report.

¶ 17      Edwina Harrison and former ASA Peggy Chiampas, who is now an associate judge of the circuit court of Cook County, also testified again at the resentencing hearing. Harrison reiterated her testimony from the previous sentencing hearing regarding defendant's theft of her car at gunpoint on June 5, 1993. Judge Chiampas testified that on June 15, 1993, she interviewed defendant for about 40 minutes, and that defendant agreed to give a court-reported statement. She also identified a Polaroid photograph taken of defendant in the interview room at Area 2, which fairly and accurately portrayed the way he appeared during the interview and at the time he signed the court-reported statement. On cross-examination, Judge Chiampas stated that she did not notice any injuries on defendant. On redirect, she testified that she spoke to defendant alone while she was waiting for the court reporter and that he did not complain to her at all about how he had been treated.

¶ 18      In mitigation, the defense called numerous witnesses on defendant's behalf, including: friends and family who testified about his childhood growing up in bad neighborhoods with a father who was an intravenous drug user; individuals who would employ defendant if he were released on parole; former death row inmates who testified about how defendant had matured; and a licensed clinical social worker for the Office of the State Appellate Defender who testified about defendant's social and medical history. The defense also presented a stipulation that defendant's artwork was featured in a prison art show at the Chicago Cultural Center and that a video interview was made of him in connection with the show. The defense furnished a binder of materials for the court's consideration, which included, *inter alia*, the video interview and some of his artwork.

¶ 19      At one point during the presentation of mitigation evidence, defense counsel attempted to raise a claim of actual innocence based on newly discovered evidence. Citing section 5-5-4 of the Unified Code of Corrections (Code) (730 ILCS 5/5-5-4 (West 2010)), counsel claimed that it was in the court's discretion to hear an actual innocence claim at the sentencing hearing. The trial court rejected this argument, however, and found that section 5-5-4 of the Code did not authorize it to hold a hearing on actual innocence. The court stated:

         "The only way that I could possibly enter an order of actual innocence is if the conviction would have been set aside on collateral attack. That's not what happened here. The conviction has always been affirmed. It was the sentencing hearing that posed the problem, okay."

The court noted that if defendant "wants to get up here and testify that he didn't do this crime and that he was coerced into confessing, that is something that I will listen to in mitigation." However, the court stated that it was "not going to re-litigate motions to suppress that were a long time ago litigated, [and] affirmed on appeal in his case."

¶ 20      After the defense rested in mitigation, the parties presented argument. Defendant then spoke in allocution and apologized "for what the Chase family has been through *** the loss that they have suffered because of ignorance and stupidity," and "for all the things [he had] done back then." He also expressed regret that he had not been around to take care of his family.

¶ 21      In announcing sentence, the trial court noted that the defendant who appeared before the original sentencing judge was a "very, very bad man," and that it did not think that "anyone

could say that the character and the attitude of the defendant would indicate that he was unlikely to commit another crime." However, the court noted that it had significant mitigating evidence before it and "now believe[d] that the defendant's criminal conduct was the result of circumstances unlikely to recur." That said, the court noted that its findings "[did] not in any way lessen the fact that this defendant ended the life of an otherwise healthy, happy 73-year-old man who had just treated himself to a new car because he was about to retire." The court also pointed out the effects on the victim's family and noted: "I still have yet to hear you say or find any evidence from any source that you regret shooting and killing Clifford Chase." The court then sentenced defendant to an extended term of 90 years' imprisonment for first degree murder based on the fact that the victim was over 60 years of age, and a consecutive term of 15 years' imprisonment for attempted armed robbery.

¶ 22                                                    II. ANALYSIS

¶ 23        Defendant first contends that the trial court erred in excluding from his resentencing hearing discovery and evidence indicating that he was factually innocent of the charges against him. He claims that section 5-5-4(b) of the Code "expressly instructs the court to consider evidence of actual innocence," though he acknowledges that there is no case law interpreting this section.

¶ 24        The State responds that the trial court properly followed the mandate of the reviewing court and limited the scope of the proceedings on remand to a sentencing hearing. The State also responds that section 5-5-4 only allows the court that sets aside a sentence, in this case the federal district court, to determine whether defendant was factually innocent of the charges.

¶ 25        To determine whether the trial court was required to grant defendant discovery and allow him to present evidence of his factual innocence at his resentencing hearing, we look to the language of section 5-5-4(b) of the Code. In doing so, we observe that "[t]he cardinal rule of statutory construction is to ascertain and give effect to the legislature's intent." *People v. Comage*, 241 Ill. 2d 139, 144 (2011). That intent is best indicated by giving the statutory language its plain and ordinary meaning. *Comage*, 241 Ill. 2d at 144. "To determine the plain meaning, we must consider the statute in its entirety and be mindful of the subject it addresses." *Comage*, 241 Ill. 2d at 144. Our review is *de novo*. *Comage*, 241 Ill. 2d at 144.

¶ 26        Section 5-5-4(b) of the Code provides:

> "If a conviction or sentence has been set aside on direct review or on collateral attack and the court determines by clear and convincing evidence that the defendant was factually innocent of the charge, the court shall enter an order expunging the record of arrest from the official records of the arresting authority and order that the records of the clerk of the circuit court and Department of State Police be sealed until further order of the court upon good cause shown or as otherwise provided herein, and the name of the defendant obliterated from the official index requested to be kept by the circuit court clerk under Section 16 of the Clerks of Courts Act in connection with the arrest and conviction for the offense but the order shall not affect any index issued by the circuit court clerk before the entry of the order." 730 ILCS 5/5-5-4(b) (West 2010).

¶ 27 Here, contrary to defendant's claim, we find nothing in the language of section 5-5-4(b) of the Code that requires a trial court to allow defendant to conduct discovery and present evidence of factual innocence on a remand for resentencing. Rather, section 5-5-4(b) merely states what is to happen in the event that a conviction or sentence is set aside by a court of review or by a court in a collateral proceeding and a determination is made that defendant was factually innocent of the charge. That said, it makes sense that this statute, which governs resentences, would not address the procedures for raising and litigating a claim of actual innocence. The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2010)), of which defendant is clearly aware, already provides a comprehensive procedure for pursuing such claims. Under defendant's proposed reading of section 5-5-4(b), however, any defendant whose sentence has been fortuitously overturned on a sentencing error would be allowed a full-blown evidentiary hearing on the issue of actual innocence at his resentencing hearing. Meanwhile, all other criminal defendants would be required to file a postconviction petition in compliance with the Act. We find no indication that such separate treatment was intended by the legislature. We therefore conclude that the plain language of section 5-5-4(b) of the Code does not require a trial court to allow defendant to present evidence of factual innocence on a remand for resentencing and, accordingly, that the trial court did not err in declining defendant's request to present such evidence in this case.

¶ 28 During his resentencing evidentiary hearing, defendant called his brother, Rashid Harris, who testified that defendant confessed as a result of being beaten while in custody. The circuit court allowed this testimony. Prior to his trial, defendant did file a motion to suppress his statements, alleging they were the result of coercion. The trial court denied this motion after an evidentiary hearing. In his direct appeal to our supreme court, defense counsel argued that defendant's statements should have been suppressed because defendant was removed from Cook County jail and taken to Area 2 to be interviewed, arguing that this violated the Illinois *Habeas Corpus* Act (735 ILCS 5/10-131 (West 1994)). The defendant did not raise on appeal his assertion that his statements were coerced. *People v. Harris*, 182 Ill. 2d 114, 147-50 (1998). The supreme court also affirmed defendant's convictions for attempted armed robbery, rejecting his argument that it was improperly based on the same physical act as the murder. *Harris*, 182 Ill. 2d at 133-34.

¶ 29 Defendant subsequently filed two postconviction petitions. A judge other than the trial judge denied these petitions without an evidentiary hearing. Defendant argued that he was entitled to an evidentiary hearing because he was actually innocent. Defendant attached affidavits from his brothers Rashid and Darrell, who stated that defendant was at home with them watching a movie at the time of the shooting. The defendant also attached affidavits from two of his codefendants in which they averred that defendant was not present at the time of the shooting. The supreme court affirmed the circuit court's dismissal of defendant's claim of actual innocence without an evidentiary hearing. The court held that defendant's brothers' affidavits did not constitute newly discovered evidence. *People v. Harris*, 206 Ill. 2d 293, 301 (2002). The supreme court further held that the defendant's codefendants' affidavits "[were] not of such a conclusive character that they would probably change the outcome on retrial." *Harris*, 206 Ill. 2d at 302. However, the supreme court did find that defendant made a substantial showing that he received ineffective assistance of counsel for

failing to investigate and present mitigation evidence in his capital sentencing hearing. *Harris*, 206 Ill. 2d at 304-06. The supreme court remanded the case to the circuit court to address this issue.

¶ 30    Before the circuit court could hold an evidentiary hearing on this issue, Governor George Ryan commuted his death sentence and imposed a sentence of natural life without the possibility of parole. The circuit court then dismissed defendant's postconviction petition as moot because the issues raised addressed only sentencing issues. This court affirmed the dismissal, holding that the Governor's commutation converted defendant's "judicially imposed sentence" into "an essentially unreviewable executively imposed one." *People v. Harris*, 357 Ill. App. 3d 330, 333-36 (2005). The supreme court denied defendant's petition for leave to appeal.

¶ 31    Defendant then filed a *habeas corpus* petition in federal district court pursuant to 28 U.S.C. § 2254(d)(1). *United States ex rel. Harris v. McCann*, 558 F. Supp. 2d 826 (N.D. Ill. 2008). In his petition, defendant raised five allegations of ineffective assistance of trial counsel and four allegations not involving ineffective assistance of trial counsel. None of these allegations involved any allegations of coercion, nor did defendant allege that his trial, appellate, or postconviction counsel was ineffective for not asserting that his statements to the police were coerced. The district court considered all nine of the issues raised by defendant in his *habeas corpus* petition and concluded "the Court grants Harris' request for an evidentiary hearing on the issue of whether his attorney provided constitutionally ineffective assistance of counsel for failing to investigate and present mitigation evidence at the second stage of his capital sentencing hearing." *Harris*, 558 F. Supp. 2d at 842.

¶ 32    The district court specifically rejected several contentions raised in defendant's federal petition which defendant raised in his resentencing hearing. The court agreed with the supreme court's holding that: " '[t]he verdicts returned by the jury clearly established the defendant's commission of the murder in the course of attempted armed robbery.' " *Harris*, 558 F. Supp. 2d at 844 (quoting *Harris*, 182 Ill. 2d at 155). The district court rejected defendant's assertion that the Illinois Supreme Court's rejection of defendant's postconviction assertion of an alibi was erroneous. *Harris*, 558 F. Supp. 2d at 847. The district court also rejected defendant's assertion that his statements should have been suppressed because he was improperly removed from the Cook County jail. *Harris*, 558 F. Supp. 2d at 848-49. In the instant case, both our supreme court and the federal district court considered and rejected defendant's claims regarding actual innocence. Section 5-5-4(b) of the Code does not provide a basis for the defendant to reopen this issue. Any claims of actual innocence asserted by defendant must be brought to the circuit court's attention through filing a successive postconviction petition pursuant to the requirements of section 122-1(f) of the Act, demonstrating cause and prejudice. 725 ILCS 5/122-1(f) (West 2010).

¶ 33    Defendant next contends that the trial court erred in imposing consecutive sentences pursuant to section 5-8-4 of the Code (730 ILCS 5/5-8-4 (West 1992)). Citing *People v. Whitney*, 188 Ill. 2d 91 (1999), he claims that only concurrent sentences could be imposed where no bodily injury occurred during the commission of the triggering offense, *i.e.*, attempted armed robbery. The State responds that defendant's consecutive sentences were proper because he did, in fact, inflict great bodily harm during the commission of attempted

armed robbery.

¶ 34 Section 5-8-4 of the Code provides:

"The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless, one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily injury ***." 730 ILCS 5/5-8-4(a) (West 1992).

In *Whitney*, our supreme court interpreted this provision to require the imposition of consecutive sentences only "where the defendant has been convicted of either a Class X or Class 1 felony and where he had inflicted severe bodily injury *during the commission of that felony*." (Emphasis added.) *Whitney*, 188 Ill. 2d at 98-99.

¶ 35 Here, there is no dispute between the parties that defendant's conviction of the Class 1 felony of attempted armed robbery serves as a triggering offense under section 5-8-4. 720 ILCS 5/8-4(c)(2), 18-2 (West 1992). The only dispute is whether he inflicted severe bodily injury during the commission of that offense.

¶ 36 In addressing this issue, we find *People v. Thompson*, 331 Ill. App. 3d 948 (2002) instructive. In *Thompson*, 331 Ill. App. 3d at 950, defendant and his accomplice devised a plan to rob someone or steal a car. The accomplice flagged down a cab, and they directed the driver to an address near 119th and Lowe Streets, in Chicago. *Thompson*, 331 Ill. App. 3d at 950. The accomplice then shot the driver in the back of the head, and defendant got out of the car, opened the driver-side door, and took some money from the victim's front pocket. *Thompson*, 331 Ill. App. 3d at 950. He was sentenced to consecutive, respective terms of 70 and 35 years' imprisonment for murder and armed robbery, but subsequently maintained that a consecutive sentence was not authorized under section 5-8-4(a). *Thompson*, 331 Ill. App. 3d at 950, 955. This court affirmed his consecutive sentence, noting:

"In the present case, the requirement that the bodily injury be inflicted on the victim of the triggering felony is satisfied since there was only one victim. With regard to the necessary connection between the triggering offense and the victim's bodily harm, the evidence shows defendant and [his accomplice] planned to rob the victim prior to entering the victim's cab. Upon being driven to the designated address, [the accomplice] shot the victim in the head, prompting defendant to take a small amount of money from the victim's person and then flee the scene with his accomplice. Notably, this court has recognized that while murder itself is not a triggering felony under the version of section 5-8-4(a) applicable here, the death of a victim during the commission of the triggering offense may provide the basis for a finding of severe bodily injury. [Citations.] Based on the evidence, we conclude the victim's death, *i.e.*, the severe bodily injury, occurred essentially simultaneously with the armed robbery and, hence, the victim's death occurred during the commission of the triggering crime as directed by *Whitney* ***." *Thompson*, 331 Ill. App. 3d at 956-57.

¶ 37 Here, as in *Thompson*, Chase was the only victim of the triggering felony. There was also a connection between his death and the attempted armed robbery where he was shot by defendant after Antoine Moore was unsuccessful in getting him out of his car at gunpoint and

said, "Bust him." Moreover, the death and the attempted armed robbery occurred essentially simultaneously. Under the circumstances, we conclude that the trial court did not err in imposing consecutive sentences. *Thompson*, 331 Ill. App. 3d at 956-58.

¶ 38 Defendant nonetheless takes issue with this conclusion and claims that the supreme court has already held "that the murder and the attempted armed robbery were separate acts and that the attempted armed robbery occurred prior to the victim's death." He claims that "the two shots were legally separate actions for sentencing purposes, and the result of one shot cannot simply be transferred to the other shot." For clarity, we note that the portion of the supreme court's opinion on direct appeal relied upon by defendant is as follows:

> "The defendant makes the related contention that his convictions for first degree murder and attempted armed robbery were improperly based on the same physical act, the shooting of the victim by the defendant. Citing *People v. King*, 66 Ill. 2d 551 (1977), the defendant contends that multiple convictions may not be based on the same act. What the defendant overlooks, however, is that he fired two shots at the victim: the first shot shattered the car window but did not strike the victim, and the second shot struck the victim in the head, killing him. While the defendant's conviction for first degree murder must be based on the second, fatal shot, his conviction for attempted armed robbery may be based on the first shot, as our preceding discussion makes clear. *** The defendant's separate convictions for murder and attempted armed robbery are therefore proper in this case." *Harris*, 182 Ill. 2d at 133-34.

¶ 39 Contrary to defendant's claim, we find it insignificant for purposes of section 5-8-4 that the supreme court considered the two shots fired by defendant to be separate acts for purposes of the one act, one crime rule. The issue is whether defendant inflicted severe bodily injury during the commission of the triggering offense, *i.e.*, attempted armed robbery. As noted above, the record shows that Clifford Chase was shot and killed essentially simultaneously with the attempted armed robbery. Therefore, in accordance with *Thompson*, we find that Chase's death occurred during the commission of the triggering offense and affirm defendant's consecutive sentence. We note that this is the same conclusion reached by the federal district court. *Harris*, 558 F. Supp. 2d at 844.

¶ 40 Next, defendant contends that the trial court abused its discretion in sentencing him to 90 years' imprisonment for first degree murder. The State responds that the trial court properly sentenced defendant after considering all of the factors in aggravation and mitigation.

¶ 41 It is well settled that a reviewing court will not disturb the sentence imposed by the trial court absent an abuse of discretion. *People v. Cabrera*, 116 Ill. 2d 474, 494 (1987). Where, as here, the sentence falls within the prescribed statutory limits, it will not be disturbed unless it is greatly at variance with the purpose and spirit of the law or is manifestly disproportionate to the offense. *Cabrera*, 116 Ill. 2d at 493-94. A sentence will not be found disproportionate where it is commensurate with the seriousness of the crime and adequate consideration was given to any relevant mitigating circumstances, including the rehabilitative potential of defendant. *People v. Perez*, 108 Ill. 2d 70, 93 (1985).

¶ 42 Here, defendant claims that his 90-year sentence for first degree murder is excessive in

light of certain mitigating circumstances; namely, that he was 18 years old at the time of the offense, had no prior violent convictions, and was found by the trial court to be rehabilitated and unlikely to reoffend. However, we note that the trial court is presumed to have considered defendant's age and criminal history in making its sentencing determination, both of which were in the presentence investigation report. *People v. Partin*, 156 Ill. App. 3d 365, 373 (1987). It was also not required to give greater weight to the rehabilitative potential of defendant than to the seriousness of the offense. *People v. Gomez*, 2011 IL App (1st) 092185, ¶ 87. Essentially, in requesting a reduction in sentence, defendant is asking this court to rebalance the appropriate factors and independently conclude that his sentence is excessive; however, that is not our function. *People v. Burke*, 164 Ill. App. 3d 889, 902 (1987) (citing *People v. Cox*, 82 Ill. 2d 268, 280 (1980)).

¶ 43     In this case, defendant was convicted of first degree murder and eligible for an extended-term sentence of between 60 and 100 years' imprisonment because the victim was 60 years of age or older at the time of the offense. 730 ILCS 5/5-5-3.2(b)(4)(ii), 5-8-2(a)(1) (West 1992). The 90-year sentence imposed by the trial court fell within this prescribed range and was not disproportionate to the offense where defendant shot and killed the elderly Mr. Chase as he was trying to flee an armed robbery attempt, then laughed about it afterwards. Under the circumstances, we find no abuse of discretion in the term imposed to permit any modification by this court. *People v. Almo*, 108 Ill. 2d 54, 70 (1985).

¶ 44     Defendant lastly contends that his extended-term sentence for first degree murder violates *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because the aggravating factor of the victim's age was not properly submitted to a jury and proved beyond a reasonable doubt. Our supreme court has noted that "[a]n *Apprendi* violation is not *per se* reversible error and may be subject to a harmless-error analysis." *People v. Jones*, 219 Ill. 2d 1, 36 (2006). Here, there was a stipulation between the parties at trial establishing that Dr. Barry Lifschultz, the assistant medical examiner who performed the autopsy on Clifford Chase, would have testified that Chase "appear[ed] the stated age of seventy years old." At defendant's resentencing hearing, Clifford Chase's daughter, Olivia Chase, also testified that her father was about 70 years old when he was murdered. This testimony went uncontested. Under the circumstances, we find that any *Apprendi* violation based on the victim's age in this case was harmless error. *Jones*, 219 Ill. 2d at 36.

¶ 45     For the reasons stated, we affirm defendant's consecutive sentences of 90 years' imprisonment for first degree murder, and 15 years' imprisonment for attempted armed robbery.

¶ 46     Affirmed.