NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 190164-U

NO. 4-19-0164

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 8, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| DAVID L. BRONSON, | ) | No. 18CF35 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Presiding Justice Knecht concurred in the judgment.
Justice DeArmond specially concurred.

**ORDER**

¶ 1    *Held*:   The evidence was sufficient to convict defendant for unlawful possession of a hypodermic syringe. The evidence was insufficient to convict defendant for obstructing justice.

¶ 2    In December 2018, following a bench trial, defendant, David L. Bronson, was found guilty of obstructing justice (720 ILCS 5/31-4(a)(1) (West 2016)), unlawful possession of a hypodermic syringe (720 ILCS 635/1 (West 2018)), and possession of a controlled substance (720 ILCS 570/402(c) (West 2018)). On appeal, defendant argues his convictions for unlawful possession of a hypodermic syringe and obstructing justice should be reversed because the evidence presented by the State was insufficient to sustain his conviction. We affirm defendant's conviction for unlawful possession of a hypodermic syringe, reverse his conviction for obstructing

justice, and remand his case for resentencing on his remaining convictions.

¶ 3                                    I. BACKGROUND

¶ 4        On February 2, 2018, the State charged defendant with one count of obstructing justice (720 ILCS 5/31-4(a) (West 2016)) and one count of unlawful possession of a hypodermic syringe (720 ILCS 635/1 (West 2018)). The State subsequently charged defendant with one count of possession of a controlled substance (720 ILCS 570/402(c) (West 2018)). Defendant's case proceeded to a bench trial in October 2018.

¶ 5        At defendant's trial, the State first presented testimony from Corporal Derek Schumm of the Pontiac Police Department. Corporal Schumm testified that, on January 31, 2018, he responded to a report of a possible drug overdose. Less than a minute after Corporal Schumm received the call, he arrived at the scene of the reported overdose. It had apparently occurred inside a parked van one block away from the police department's headquarters. Another officer arrived shortly thereafter. While the other officer tended to the overdose victim, Corporal Schumm spoke with a witness. According to Corporal Schumm, the witness told him of two other "persons of interest," a man and a woman who had "left the scene" prior to the officers' arrival. Officers then began looking for the two individuals.

¶ 6        Corporal Schumm testified that, minutes after the police began their search, Major Dan Davis, another Pontiac police officer, located defendant and a woman one block from the scene. Corporal Schumm joined Major Davis and the two questioned defendant "about the van and what had happened." According to Corporal Schumm, defendant "[i]nitially *** denied even being in the van." However, after Corporal Schumm confronted defendant with "what [he] had seen with the overdosing subject" and with the statement of the witness with whom he had spoken, defendant

- 2 -

admitted he had been in the van and had left when the person started to overdose. After a search of defendant's person failed to reveal any evidence, Corporal Schumm asked defendant "about any disposal of possible evidence." According to Corporal Schumm, defendant at first "denied getting rid of anything after he left the van" but later admitted to disposing of "a couple of syringes and a spoon" along the north side of the church that was adjacent to the location where Corporal Schumm and Major Davis were questioning defendant. Defendant then led the officers to the place where he had dropped the items. The officers collected the hypodermic syringes and spoon and arrested defendant.

¶ 7        The State also called Major Dan Davis who testified consistently with Corporal Schumm. However, Major Davis added that defendant admitted to hiding the hypodermic syringes and spoon along the side of the church after he first saw Major Davis approach him in his squad car.

¶ 8        After Major Davis testified, defendant's bench trial was continued on the State's motion. When the trial resumed, the State presented a laboratory report from the Illinois State Police Division of Forensic Services, the contents of which had been stipulated to by defendant. According to the report, residue on the spoon collected by officers tested positive for fentanyl. The State then rested.

¶ 9        Defendant testified on his own behalf. According to defendant, on January 31, 2018, he was walking near a church when he noticed "police everywhere and a drug dog and an ambulance." Defendant testified officers then approached him, told him they had discovered "the needles and the spoon," and began questioning him. Defendant denied that he had ever possessed the spoon or the hypodermic needles and denied that he had placed the items near the church. The

defense then rested.

¶ 10 After closing arguments, the trial court found defendant guilty of all charges. Later, the court conducted a sentencing hearing at which it rendered an aggregate sentence for all three convictions of 24 months' probation, 40 hours' community service, and 180 days' imprisonment, which the court held in abeyance pending completion of his term of probation. The court subsequently denied defendant's motion for a new trial.

¶ 11 This appeal followed.

¶ 12 II. ANALYSIS

¶ 13 On appeal, defendant argues his convictions for unlawful possession of a hypodermic syringe and obstructing justice should be reversed because the evidence presented by the State was insufficient to sustain his convictions.

¶ 14 "The State has the burden of proving beyond a reasonable doubt each element of an offense." *People v. Gray*, 2017 IL 120958, ¶ 35, 91 N.E.3d 876. When reviewing a claim that the State's evidence was insufficient to sustain a conviction, we must determine whether, "viewing the evidence in the light most favorable to the State, a rational trier of fact could have found the required elements of the crime beyond a reasonable doubt." *People v. Bradford*, 2016 IL 118674, ¶ 12, 50 N.E.3d 1112. Under this standard of review, we will only reverse a conviction where the evidence is "so improbable and unsatisfactory it creates a reasonable doubt as to defendant's guilt." *People v. Lewis*, 2019 IL App (4th) 150637-B, ¶ 79, 123 N.E.3d 1153.

¶ 15 A. The Evidence Was Sufficient to Convict Defendant

for Possession of a Hypodermic Syringe

¶ 16 Defendant argues his conviction for unlawful possession of a hypodermic syringe

should be reversed because the State failed to establish a necessary element of the offense. Defendant was charged with, and convicted of, violating section 635/1 of the Hypodermic Syringes and Needles Act. That section provides, in relevant part:

"(a) Except as provided in subsection (b), no person *** shall have in his or her possession a hypodermic syringe, hypodermic needle, or any instrument adapted for the use of controlled substances or cannabis by subcutaneous injection.

(b) A person who is at least 18 years of age may purchase from a pharmacy and have in his or her possession up to 100 hypodermic syringes or needles." 720 ILCS 635/1 (West 2018).

¶ 17 Defendant's argument that the State failed to prove him guilty of violating the Hypodermic Syringes and Needles Act is predicated on his interpretation of subsection 635/1(a). Defendant contends the clause "adapted for the use of controlled substances or cannabis by subcutaneous injection" not only modifies the word "instrument," but also modifies "hypodermic syringe" and "hypodermic needle." Accordingly, defendant argues, to sustain his conviction, the State was required to present evidence that he possessed a hypodermic syringe or needle adapted for the subcutaneous injection of a controlled substance or cannabis. The State disagrees with defendant's interpretation. Because the parties disagree whether possession of a hypodermic syringe, in the absence of evidence it has been adapted for the use of controlled substances or cannabis by subcutaneous injection, violates the Hypodermic Syringes and Needles Act, we must first construe the statutory language before addressing defendant's sufficiency of the evidence claim. See, *e.g.*, *Bradford*, 2016 IL 118674, ¶ 14.

¶ 18 The rules governing statutory construction are well-established. "The primary

objective of statutory construction is to ascertain and give effect to the true intent of the legislature." *People v. Clark*, 2019 IL 122891, ¶ 18, 135 N.E.3d 21. "The best indication of this intent is the statutory language, given its plain and ordinary meaning. [Citation.] The words and phrases in a statute should be construed in light of other relevant provisions and not in isolation. [Citation.]" *Bradford*, 2016 IL 118674, ¶ 15. "We construe statutes as a whole, so that no part is rendered meaningless or superfluous." (Internal quotation marks omitted.) *People v. Diggins*, 235 Ill. 2d 48, 54, 919 N.E.2d 327, 331 (2009). In construing statutory language, we may consider "the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or another." *People v. Gutman*, 2011 IL 110338, ¶ 12, 959 N.E.2d 621. "Where the language is plain and unambiguous, it must be applied without resort to further aids of statutory construction. [Citation.] Where the language is ambiguous, however, we may consider external sources, such as legislative history, in order to discern the intent of the legislature. [Citation.]" *Bradford*, 2016 IL 118674, ¶ 15. "The language of a statute is ambiguous if it is susceptible to more than one reasonable interpretation." *People v. Boyce*, 2015 IL 117108, ¶ 22, 27 N.E.3d 77.

¶ 19 Here, we find section 635/1 is not ambiguous. Considering the statute in its entirety, defendant's interpretation is unreasonable because it would render superfluous subsection 635/1(b), which provides an exception to the crime specified in subsection 635/1(a). See *People v. Fiumetto*, 2018 IL App (2d) 170230, ¶ 16, 109 N.E.3d 756. If, as defendant suggests, subsection 635/1(a) were only meant to prohibit possession of hypodermic syringes and needles that are adapted for the subcutaneous injection of controlled substances or cannabis, there would be no need for the exception contained in subsection 635/1(b), which authorizes possession of unaltered

and unmodified hypodermic syringes and needles. Defendant's interpretation of subsection 635/1(a) would render the rest of the statute unnecessary. Instead, we interpret the statute to mean that, unless an exception exists, possession of hypodermic syringes and hypodermic needles is prohibited. We note this interpretation comports with case law and with the jury instruction applicable to section 635/1. See, *e.g.*, *People v. Johnson*, 174 Ill. App. 3d 726, 731, 528 N.E.2d 1356, 1360 (1988) ("In order to sustain a conviction for unlawful possession of a hypodermic syringe ***, the State must prove beyond a reasonable doubt that the defendant had knowledge of the presence of the syringe and was in immediate and exclusive control of it."); *People v. Hairston*, 86 Ill. App. 3d 295, 300, 408 N.E.2d 382, 386 (1980) ("[The defendant's] possession of the syringe alone presented a *prima facie* case of a violation of the statute making unlawful possession of a hypodermic syringe a crime."); Illinois Pattern Jury Instruction, Criminal, No. 17.37 (approved December 8, 2011) (stating a person commits the offense where he "knowingly has in his possession *[ (a hypodermic syringe) (a hypodermic needle) (any instrument adapted for the use of a controlled substance or cannabis by subcutaneous injection) ]*").

¶ 20          Even assuming, *arguendo*, that subsection 635/1(a) is ambiguous, as defendant suggests, we would still reject his interpretation. Defendant's construal of subsection 635/1(a) is based on a canon of construction utilized by the United States Supreme Court in *Paroline v. U.S.*, 572 U.S. 434 (2014). In that case, the Supreme Court, construing a different statute, wrote: "[w]hen several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all." (Internal quotation marks omitted.) *Id.* at 447. We do not believe this canon of construction is applicable to subsection 635/1(a) because the clause "adapted for the use of controlled

substances or cannabis by subcutaneous injection" is not as applicable to the terms "hypodermic syringe" and "hypodermic needle" as it is to the word "instrument." As the State notes, hypodermic syringes and hypodermic needles are inherently adapted for the purpose of subcutaneously injecting substances into the body. A "hypodermic syringe" is defined as "a small syringe used with a hollow needle for injection of material into or beneath the skin" (Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/hypodermic%20syringe (last visited Dec. 23, 2020)) and a "hypodermic needle" is defined as "a hypodermic syringe complete with needle" (Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/hypodermic%20needle (last visited Dec. 23, 2020)). Thus, unlike the nondescript "instrument," the terms hypodermic syringe and hypodermic needle do not require the same descriptive qualifier to identify them as objects that are adapted to subcutaneously inject substances into the body. Applying the description "adapted for the use of controlled substances or cannabis by subcutaneous injection" to "hypodermic syringe" and "hypodermic needle" would therefore be redundant.

¶ 21 We agree with the State that, even if section 635/1 is ambiguous, applying the last antecedent rule provides the most reasonable interpretation of the statute. The last antecedent doctrine "provides that relative or qualifying words or phrases in a statute serve only to modify words or phrases which are immediately preceding. They do not modify those which are more remote." *People v. Davis*, 199 Ill. 2d 130, 138, 766 N.E.2d 641, 645 (2002). Applying the last antecedent rule here, the clause "adapted for the use of controlled substances or cannabis by subcutaneous injection" modifies only the word "instrument." As noted above, this interpretation resolves the conflict between subsections 635/1(a) and 635/1(b) that would result if, as defendant

suggests, the clause modified "hypodermic syringe," "hypodermic needle," and "instrument."

¶ 22        We now turn to defendant's argument that the evidence was insufficient to establish the essential elements of unlawful possession of a hypodermic syringe. As stated above, section 635/1 requires that, to sustain a conviction, the State was only required to prove defendant possessed a hypodermic syringe. Under our case law, the State was also required to prove defendant possessed the hypodermic syringe knowingly. See *Johnson*, 174 Ill. App. 3d at 731. The State's evidence was sufficient to meet its burden. Viewed in the light most favorable to the prosecution, the evidence presented at trial showed defendant knowingly possessed the hypodermic syringes until he saw Major Davis approaching him at which time he disposed of the syringes next to a church. Thus, the evidence was sufficient to sustain defendant's conviction.

¶ 23        B. The Evidence Was Insufficient to Convict Defendant for Obstructing Justice

¶ 24        Defendant also argues his conviction for obstructing justice should be reversed because the State failed to establish a necessary element of the offense. Specifically, defendant claims his conviction should be reversed because "the State failed to present any evidence that [he] concealed evidence in a manner that materially impeded his prosecution." In support of his claim, defendant relies on *People v. Comage*, 241 Ill. 2d 139, 946 N.E.2d 313 (2011).

¶ 25        The offense of obstructing justice through concealment is set forth in section 31-4(a)(1) of the Criminal Code of 2012 (720 ILCS 5/31-4(a)(1) (West 2016)), which states as follows:

>        "A person obstructs justice when, with intent to prevent the apprehension
>        or obstruct the prosecution or defense of any person, he or she knowingly commits
>        any of the following acts:

(1) Destroys, alters, conceals or disguises physical evidence, plants false evidence, [or] furnishes false information ***."

¶ 26　　　　In *Comage*, our supreme court considered "whether certain physical evidence was 'concealed' within the meaning of Illinois' obstructing justice statute." *Comage*, 241 Ill. 2d at 140. In that case, police officers investigating a theft at a gas station encountered the defendant, who matched the description they had been given of the suspect. *Id.* at 142. Before the officers could question the defendant, he ran away from them and into a nearby parking lot. *Id.* When the officers ordered the defendant to stop, he did so and identified himself. *Id.* After initially cooperating with the police, the defendant again ran from the officers, who pursued him. *Id.* During the chase, the officers observed the defendant "reach into his pocket, pull out two rod-like objects that were five to six inches in length, and throw them over a six-foot-tall, wooden privacy fence" that abutted the parking lot. *Id.* The officers had a clear view of the defendant throwing the objects because the area was "well-lit with artificial lighting." (Internal quotation marks omitted.) *Id.* After the police secured the defendant, one of the officers walked around the other side of the fence and, within 20 seconds of searching, recovered a crack cocaine pipe and a push rod which were within 10 feet of where the defendant was apprehended. *Id.* at 142-43.

¶ 27　　　　The defendant in *Comage* argued "the State failed to prove him guilty beyond a reasonable doubt of obstructing justice because he never concealed the crack pipe and push rod." *Id.* at 143. In its review of the obstructing justice statute, our supreme court noted, "in enacting section 31-4, the legislature intended to criminalize behavior that *actually* interferes with the administration of justice, *i.e.*, conduct that obstructs prosecution or defense of any person." (Emphasis in original and internal quotation marks omitted.) *Id.* at 149. The court then reasoned,

- 10 -

"a defendant who places evidence out of sight during an arrest or pursuit has 'concealed' the evidence for purposes of the obstructing justice statute if, in doing so, the defendant actually interferes with the administration of justice, *i.e.*, materially impedes the police officers' investigation." *Id.* at 150. Ultimately, the court found, although the items defendant had thrown over the fence were "briefly out of the officers' sight," he did not materially impede the officers' investigation and, accordingly, did not conceal the items within the meaning of the statute. *Id.*

¶ 28        The supreme court recently reaffirmed its decision in *Comage*. In *People v. Casler*, 2020 IL 125117, ¶ 41, the supreme court extended the reasoning employed in *Comage* and held, regardless of whether a defendant is charged with obstruction of justice by concealing evidence or by providing false information, "a defendant's acts must be a material impediment and must be proved in a prosecution for obstructing justice." In *Casler*, the court cited with approval *People v. Taylor*, 2012 IL App (2d) 110222, 972 N.E.2d 753, which, although somewhat different from the present case, we find instructive.

¶ 29        In *Taylor*, a police officer testified he was on patrol when he observed the defendant, whom he recognized from previous interactions. *Id.* ¶ 3. The officer knew the defendant was wanted on a warrant. *Id.* After confirming the defendant's warrant was still active, the officer approached the defendant and asked him for identification because, although the officer was "pretty sure" of the defendant's identity, he was not positive. (Internal quotation marks omitted.) *Id.* ¶¶ 3-4. The defendant identified himself as "Keenan T. Smith." *Id.* ¶ 4. The officer ran this name through his computer system, which did not show that any such person existed. *Id.* The officer returned to the defendant who finally divulged his real name. *Id.* The officer arrested the defendant and then confirmed the defendant's identity by looking at the identification card he was

carrying. *Id.*

¶ 30    On appeal, the defendant in *Taylor* argued "the evidence was insufficient to support his conviction for obstruction of justice, because the evidence showed that his conduct of initially giving [the officer] a false name did not materially impede the investigation." *Id.* ¶ 8. The reviewing court noted "the relevant issue in weighing a sufficiency-of-the-evidence challenge to a conviction for obstruction of justice is whether the defendant's conduct actually posed a material impediment to the administration of justice." *Id.* ¶ 17. The court found the defendant did not materially impede the officer's investigation by providing a false name because the entire encounter lasted only a few minutes and the defendant's actions did not significantly delay his arrest or pose a substantial risk that the officer would "mistakenly allow" the defendant to go free. *Id.* ¶¶ 17-18. The court ultimately reversed the defendant's conviction. *Id.* ¶ 19.

¶ 31    Based on the above authority, we find the State did not prove defendant here guilty of obstructing justice because it failed to establish his conduct materially impeded the police officers' investigation. Viewed in the light most favorable to the prosecution, the State's evidence established that, after defendant observed Major Davis approaching in his squad car, he hid two hypodermic syringes and a spoon outside of a church. Once police officers stopped defendant and began questioning him, he initially denied knowledge of the overdose incident and denied that he disposed of any contraband. The police searched defendant's person and did not discover any incriminating evidence. At trial, neither party asked the officers how long they questioned defendant before he confessed that he hid the items and revealed their location. However, even considering the evidence in the light most favorable to the State, it is doubtful it was more than a few minutes. We note that, as in *Taylor*, the entire exchange between defendant and the officers

lasted only a short time and his actions did not significantly delay or otherwise hinder the police officers' investigation.

¶ 32		Accordingly, because no evidence was introduced that defendant's actions materially impeded the police officers' investigation, the State failed to establish an essential element of the offense of obstructing justice beyond a reasonable doubt and defendant's conviction must therefore be reversed.

¶ 33		Because the State's evidence was insufficient to sustain defendant's conviction for obstructing justice, we find defendant would be subject to double jeopardy if he were retried. For this reason, retrial of defendant is barred. See *People v. Williams*, 239 Ill. 2d 119, 133, 940 N.E.2d 50, 59 (2010) ("When a conviction is reversed based on evidentiary insufficiency, the double jeopardy clause precludes the State from retrying the defendant, and the only proper remedy is a judgment of acquittal."). Further, because the trial court issued an aggregate sentence for all three convictions, and we now reverse defendant's conviction for obstructing justice, remand for resentencing on the remaining two convictions is necessary. See, *e.g.*, *People v. Allen*, 288 Ill. App. 3d 502, 509, 680 N.E.2d 795, 801 (1997).

¶ 34		III. CONCLUSION

¶ 35		For the reasons stated, we affirm defendant's conviction for unlawful possession of a hypodermic syringe, reverse his conviction for obstructing justice, and remand his case for resentencing on his remaining convictions.

¶ 36		Affirmed in part, reversed in part, and remanded with directions.

¶ 37		JUSTICE DeARMOND, specially concurring:

¶ 38        I reluctantly agree with both the disposition and the reasoning of the majority, considering our supreme court's holding in *Comage* and subsequent cases. As a matter of *stare decisis*, I accept the majority's application of *Comage* and *Taylor*, endorsed by the supreme court in *Casler*, because the majority is merely applying the law. Indeed, the majority correctly notes the *Comage* decision controls the issue of whether defendant can be found guilty of obstructing justice.

¶ 39        Like *Comage*, this case turns on whether the defendant "concealed" contraband. But the *Comage* decision's conclusion that a defendant's acts must be a material impediment to the administration of justice added an element absent from the statute. In *Comage*, finding the word "conceal" ambiguous and in need of judicial construction, the supreme court turned to dictionary definitions and case law (mostly from other jurisdictions) for a definition. *Comage*, 241 Ill. 2d at 144-48.

¶ 40        The fact patterns of almost all the cases upon which *Comage* relied are similar: police officers *observing* a defendant tossing drugs and finding the drugs in the location where a defendant was observed tossing them. As an example, in seeking to define "conceal," the court in *Comage* closely examined the Second District case, *In re M.F.*, 315 Ill. App. 3d 641, 647-50, 734 N.E.2d 171, 176-78 (2000), which, in turn, relied on out-of-state cases (*Vigue v. State*, 987 P.2d 204 (Alaska App. 1999); *Commonwealth v. Delgado*, 544 Pa. 591, 679 A.2d 223 (1996); *State v. Patton*, 898 S.W.2d 732 (Tenn. Crim. App. 1994); *Hollingsworth v. State*, 15 S.W.3d 586 (Tex. Ct. App. 2000); *Boice v. State*, 560 So.2d 1383 (Fla. App. 1990)). After analyzing these out-of-state cases and others, the *M.F.* court found the following common denominator:

"It appears that, under the scenarios presented, the clear weight of authority from other states concludes that where a defendant merely drops, throws down, or abandons drugs in the vicinity of the defendant *and* in the presence and view of the police, this conduct does not constitute concealment that will support an evidence-tampering or obstruction charge, or a conviction that is additional to and separate from the ongoing possessory offense." (Emphasis added) *M.F.*, 315 Ill. App. 3d at 650.

¶ 41 Besides refusing to find "concealment" when drugs are abandoned in the vicinity of defendant and in view of the police, the Second District cautioned against applying "concealment" to possessory offenses where the concealed items are hidden on defendant's person (see *State v. Fuqua*, 303 N.J. Super. 40, 46, 696 A.2d 44, 47 (1997) (cocaine hidden in defendant's sock was not concealment)), reasoning that all illegal substances would be required to be carried in plain sight to avoid a sometimes more severe crime similar to obstructing justice. *M.F.*, 315 Ill. App. 3d at 649. The Second District's conclusion seems to ignore the fact that obstructing justice has a *mens rea* requirement, separate and distinct from merely having contraband in your pocket. Carrying an object is not necessarily concealing it to avoid apprehension or to thwart law enforcement.

¶ 42 Despite flaws in *M.F.*'s reasoning and its self-imposed limitation to its particular facts, the *Comage* court relied upon *M.F.* in concluding section 31-4, the obstructing justice statute (720 ILCS 5/31-4(a) (West 2006)), requires proof the defendant's actions of separating himself from the contraband "*actually* interferes with the administration of justice." (Emphasis in original.) *Comage*, 241 Ill. 2d at 149. In broadening this conclusion, *Comage* also looked at *People v. Brake*,

336 Ill. App. 3d 464, 783 N.E.2d 1084 (2003) (where obstructing justice was found when the defendant swallowed a bag of drugs despite the officer's attempt to stop him) and surmised that what compelled the decision in *Brake* and in similar "concealment" cases was not that the drugs were out of sight of the police officer, but that the "defendant had, in fact, materially impeded the officer's investigation." *Comage*, 241 Ill. 2d at 149. The *Comage* court ultimately held:

> "we have no disagreement with the proposition that a defendant who places evidence out of sight during an arrest or pursuit has 'concealed' the evidence for purposes of the obstructing justice statute if, in doing so, the defendant actually interferes with the administration of justice, *i.e.*, materially impedes the police officers' investigation." *Comage*, 241 Ill. 2d at 150.

¶ 43       The problem with *Comage*, though, is the new material-impediment element depends less on the defendant's conduct or intent and more on law enforcement's vision. In other words, whether a defendant's actions "materially impede" an arrest or investigation is based less on the actions or intent of a defendant, than on the experience, inexperience, or fortuitous circumstances of the investigating officer. As Justice Thomas aptly noted in his dissent in *Comage*:

> "Looking at whether the evidence was actually recovered—or at how easily it was recovered—improperly shifts the statutory inquiry away from its rightful focus on defendant's actions at the time of the crime onto how quickly and competently police reacted to defendant's actions after the concealment had been completed." *Comage*, 241 Ill. 2d at 158-159 (Thomas, J., dissenting).

¶ 44       Before moving on, I must point out here that at least the *Comage* court continued to connect the act of concealment with "an arrest or pursuit"—something we do not have here. In

our case, defendant was not confronted by police until *after* he left the scene and *after* he concealed, unobserved by police, the drugs. Had he not admitted hiding them and where they were located, they may have never been discovered. From all appearances, that constitutes an act of concealment with a clear intent to materially impede his prosecution.

¶ 45        Given the legislature's failure to address the judicial changes to the obstructing justice statute, our supreme court eventually doubled down on their interpretation in *Casler*, 2020 IL 125117, ¶ 41 ("Construed together, *Comage* and *Baskerville* firmly establish that a defendant's acts must be a material impediment and must be proved in a prosecution for obstructing justice."). In *Casler*, and earlier in *People v. Baskerville*, 2012 IL 111056, ¶ 39, 963 N.E.2d 898, the supreme court again found "material impediment" to be intended within the definition of not only obstructing justice but also obstructing a peace officer (720 ILCS 5/31-1(a) (West 2006)), as it applied to the furnishing of false information. The court explained its holding in the earlier cases was not intended to be limited to the concealment clause found in section 31-4(a)(1). Justice Karmeier's dissent in *Casler* accurately noted the distinction I believe exists in this present case when he identified what he considered the narrow holding of *Comage*. He discussed how the majority adopted the defendant's view that " 'because both the existence and location of the evidence were fully known to the officers[,] the evidence was not concealed' " when it concluded the defendant had not "concealed" the contraband in question. *Casler*, 2020 IL 125117, ¶ 93 (Karmeier, J., dissenting) (quoting *Comage*, 241 Ill. 2d at 144-45). As a result, the court's additional language adding the element of "material impediment" was, in his view, "merely *dicta*, entirely unnecessary after the determination that there was no concealment." *Casler*, 2020 IL

125117, ¶ 93 (Karmeier, J., dissenting). Though I agree completely with Justice Karmeier, I can acknowledge this view is entrenched as the minority viewpoint going forward.

¶ 46        The cases relied on by *Comage* and by *M.F.*, where the State could not prove the element of concealment, consist of police observing the defendant tossing an item and then retrieving it shortly thereafter. This amounts to mere abandonment, not concealment. That is not what happened here.

¶ 47        Here, defendant successfully completed the act of concealment before being confronted by the police. It was only after his admission that they were drawn to the location of the contraband. Surely, we are not to the point where, as long as a defendant readily admits his commission of the offense, he can no longer be prosecuted for it, since his admission resulted in his speedy apprehension and no "material impediment" to the investigation. What happened to the *mens rea* for obstruction by concealment, and was not the *actus reus* complete when he hid the drugs before being confronted by the police?

¶ 48        Though these facts differ from the *Comage* cases, the broad rule still applies. Indeed, what began as an effort to define "conceal" under the plain meaning of the statute has morphed into the "judicial grafting" Justice Karmeier referenced in his *Casler* dissent—adding an extra element of "materially impeding" to the offense of obstruction of justice which the state must now prove, although it exists nowhere in the statute. *Casler*, 2020 IL 125117, ¶ 91 (Karmeier, J., dissenting).

¶ 49        Because the legislature has not seen fit to address this issue since *Comage*, under the principle of legislative acquiescence, we must follow the law as it now stands. For these reasons, I specially concur.